DONALD E. AYERS D/B/A AYERS WOOD YARD, PETITIONER v. BOARD
OF ADJUSTMENT FOR THE TOWN OF ROBERSONVILLE THROUGH
ITS CHAIRPERSON THELMA ROBERSON, RESPONDENT

No. 932SC123

(Filed 1 February 1994)

**Municipal Corporations § 30.11 (NCI3d) — zoning — residential and
agricultural classification — wood yard — not "forestry"**

Petitioner's use of his property in a Residential Agricultural
District for a wood yard for receiving, weighing, grading, tem-
porarily storing and shipping cut timber does not come within
the definition of "forestry," which is a permitted use in the
zoning classification for petitioner's property.

**Am Jur 2d, Zoning and Planning § 390.**

Appeal by respondent from order entered 30 November 1992
by Judge Cy A. Grant, Jr., in Martin County Superior Court. Heard
in the Court of Appeals 2 December 1993.

In January of 1992, petitioner, Donald Ayers, began operating
a business known as Ayers Wood Yard on a leased two acre parcel
of land located within the extraterritorial zoning jurisdiction of
the Town of Robersonville. The business serves as a temporary
destination for truckloads of cut timber. Upon arrival on petitioner's
property, the timber is unloaded, weighed, and graded. The timber
is thereafter reloaded onto trucks for shipment to other locations.

The property where petitioner operates his business is zoned
RA-20 Residential Agricultural District pursuant to Article III,
Section 4 of the Town of Robersonville Extraterritorial Zoning
Ordinance (hereinafter "the ordinance"). The ordinance provides
that the Residential Agricultural District was

established as a district in which the principal use of the land
is for low density residential and agricultural purposes. This
district is intended to insure that residential development out-
side the corporate limits and not having access to public water
service and dependent upon septic tanks for sewerage disposal
will occur at a low density in order to provide a healthful
environment.

**AYERS v. BD. OF ADJUST. FOR TOWN OF ROBERSONVILLE**

[113 N.C. App. 528 (1994)]

Among the property uses permitted in the Residential Agricultural District are:

1. Single family dwellings

2. Two family dwellings

3. Schools, colleges, kindergartens and day care centers

4. Farming, truck, gardening and nurseries

5. Forestry

6. Kennels

7. Wayside stands for the sale of agricultural products on the same parcel where offered for sale

8. Churches

9. Home occupations

10. Single mobile homes

11. Uses and buildings customarily accessory to the above permitted uses

12. Public utility transmission lines, pipes, poles, towers

13. Small profession or announcement signs

14. Renting of one (1) room provided no external evidence of such is created.

Shortly after petitioner began operation of his business, a residential homeowner whose property adjoins petitioner's property complained to the Zoning Enforcement Officer about petitioner's use of the property. Following this complaint, the Zoning Enforcement Officer notified petitioner that his use of the property was in violation of the ordinance. Petitioner appealed this determination to respondent Board of Adjustment, contending that his use of the property is within the definition of "forestry", a use permitted by the ordinance. Following a hearing, the Board of Adjustment affirmed the decision of the Zoning Enforcement Officer. In its order, respondent interpreted the word "forestry" to mean "[t]he developing, caring for and management of forest: The management and harvesting of growing timber."

Petitioner filed a petition for a writ of certiorari in superior court seeking review of the decision of the Board of Adjustment.

After reviewing the record and hearing the arguments of counsel, the superior court entered an order finding *inter alia* that " 'forestry' includes the harvesting and transportation of timber to the first point of processing; that is, the point at which the wood is actually converted to some type of useable product." Based on this finding, the superior court concluded that petitioner's use of the subject property is "forestry", permitted under the zoning ordinance, and entered an order reversing the decision of the Board of Adjustment. The Board of Adjustment appealed.

> *Bowen & Batchelor, by J. Melvin Bowen and James R. Batchelor, Jr., for respondent-appellant.*

> *Colombo, Kitchen & Johnson, by Thomas H. Johnson, Jr., for petitioner-appellee.*

MARTIN, Judge.

G.S. § 160A-388(e) (Supp. 1992) provides that every decision of a municipal board of adjustment "shall be subject to review by the superior court by proceedings in the nature of certiorari." In proceedings of this nature, the superior court sits as an appellate court and may review both the sufficiency of the evidence presented to respondent and whether the record reveals an error of law. *Concrete Co. v. Board of Commissioner*, 299 N.C. 620, 265 S.E.2d 379, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980).

In the present case, the questions before the superior court were (1) what property uses are included within the definition of "forestry" as used in the ordinance and (2) whether petitioner's use of the subject property falls within that definition? It is undisputed that petitioner uses the subject property to receive, weigh, grade, temporarily store and ship cut timber. Thus, the only issue we must decide, is whether the superior court committed an error of law in interpreting and applying the ordinance.

In reviewing a decision of the Board of Adjustment for errors of law in the application and interpretation of a zoning ordinance, the superior court applies a *de novo* standard of review and can freely substitute its judgment for that of the board. *Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 431 S.E.2d 183 (1993). Similarly, in reviewing the judgment of the superior court, this Court applies a *de novo* standard of review in determining whether an error of law exists and we may freely substitute

our judgment for that of the superior court. *Id.* Questions involving the interpretation of ordinances are questions of law. *Id.* Applying a *de novo* standard of review, we conclude that the decision of the superior court is incorrect and that the decision of respondent must be reinstated.

In determining the meaning of a zoning ordinance, we attempt to ascertain and effectuate the intent of the legislative body. *Concrete Co.*, 299 N.C. at 629, 265 S.E.2d at 385. Unless a term is defined specifically within the ordinance in which it is referenced, it should be assigned its plain and ordinary meaning. *Rice Associates v. Town of Weaverville Bd. of Adjust.*, 108 N.C. App. 346, 423 S.E.2d 519 (1992). In addition, we avoid interpretations that create absurd or illogical results. *Pritchard v. Elizabeth City*, 81 N.C. App. 543, 344 S.E.2d 821, *disc. review denied*, 318 N.C. 417, 349 S.E.2d 598 (1986).

With these principles in mind, we first turn to the language of the ordinance at issue. The ordinance specifically provides that its purpose is to establish "a district in which the principal use of the land is for low density residential and agricultural purposes." The enumerated uses which are permitted within the district, though not exclusively residential and agricultural, are uniformly non-industrial. On the whole, the language of the ordinance, the title of the district it creates, and the uses which it permits, manifest an intent that the district be free from non-agricultural commercial operations.

Respondent's definition of the term "forestry", which limits the activities included thereunder to the development, management and harvesting of forest or growing timber, is not inconsistent with the zone's established residential and agricultural purposes. Rather, this definition of "forestry" limits timber associated activities to those which are strictly agricultural in nature. It does not include ancillary timber industry activities which are industrial in origin and which would detract from the district's residential and agricultural purpose and character.

Conversely, the expansive definition of "forestry" adopted by the superior court which includes the transportation of timber to the "point at which the wood is actually converted to some type of useable product" would permit uses which are clearly incompatible with the residential and agricultural purposes of the district. For example, under such a definition, industrial operations perform-

ing intermediate, but not final processing of timber, would not be prohibited. Likewise, rail and truck depots, larger than petitioner's, which receive, weigh, grade, store and ship cut timber would be permitted to operate in the Residential Agricultural District. Clearly, a definition which would permit such operations does not effectuate the manifest intent of the ordinance and would create an illogical result.

We are also persuaded that the meaning respondent assigned to the term "forestry" is its plain and ordinary meaning. The American Heritage Dictionary defines "forestry" as "(1) the science and art of cultivating, maintaining and developing forest, (2) the management of a forest land, and (3) a forest land." Webster's Third International Dictionary defines the term as "a science of developing, caring for and cultivating forest: The management of growing timber." Another source relied upon by respondent in arriving at its definition of "forestry" is *The Terminology of Forest Science and Technology, Practice and Products*, which defines "forestry" as "a profession embracing the science, business and art of creating, conserving and managing forest lands for the continuing use of their resources . . . ."

None of these ordinary definitions of "forestry" include the transportation of cut timber to the "point at which the wood is actually converted to some type of useable product." The only such definition of "forestry" with which respondent was provided came from the testimony of petitioner's expert witness. That an expert was required to provide this meaning to the term, belies any contention that this definition constitutes the term's plain and ordinary meaning.

Based on the foregoing analysis, we conclude that respondent's definition of "forestry" is correct because it (1) effectuates the intent of the ordinance to establish a district of residential and agricultural uses, (2) is consistent with the term's plain and ordinary meaning, and (3) avoids the illogical result of allowing intermediate timber processing operations and transportation depots in a district intended for low density residential and agricultural purposes. Therefore, we hold that the superior court erred as a matter of law by reversing the Board of Adjustment's conclusion that petitioner's business is in violation of the ordinance because it is not engaged in the development, management, harvesting, or care of growing timber.

For the foregoing reasons, the order of the superior court is reversed and this case is remanded for reinstatement of the decision of the Board of Adjustment.

Reversed.

Judges JOHNSON and McCRODDEN concur.