SAMUEL AND DORIS FORT, JULIE KATHERINE FAIRCLOTH, AND RAEFORD B. LOCKAMY, II, PETITIONERS v. COUNTY OF CUMBERLAND, NORTH CAROLINA, RESPONDENT, AND TIGERSWAN, INC. INTERVENOR RESPONDENT

No. COA11-758

(Filed 7 February 2012)

## 1. Zoning—standing to challenge proposed use—owner of adjoining land—use prohibited by ordinance—special damages alleged

Petitioners had standing to challenge the Cumberland County Board of Adjustment's approval of intervenor respondent's plan to build a firearms training facility. Petitioners were the owners of adjoining or nearby lands, the challenged land use was prohibited by a valid zoning ordinance, and petitioners alleged that they would sustain special damage from the proposed use through a reduction in the value of their property.

### 2. Zoning—agricultural district—firearms training facility— not permitted use

The trial court erred in a zoning case by affirming the Cumberland County Board of Adjustment's decision to uphold the Zoning Administrator's classification of petitioner intervenor's firearms training facility as a permitted use in the A1 Agricultural District. The zoning ordinance for the district in which the training facility was to be located expressly stated that it was to be used as an agricultural district with limited exceptions, including elementary or secondary schools. Respondent's facility failed to qualify under any permitted use.

Appeal by petitioners from order entered 22 February 2011 by Judge Robert F. Floyd, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 16 November 2011.

*Currin & Currin, Attorneys at Law, by Robin T. Currin and George B. Currin, for petitioners-appellants.*

*Deputy County Attorney Harvey W. Raynor, III, for respondent-appellee County of Cumberland.*

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker and*

*Brenton W. McConkey, for intervenor-respondent-appellee*

*TigerSwan, Inc.*

HUNTER, Robert C., Judge.

Petitioners-appellants, Samuel and Doris Fort, Julia Katherine Faircloth, and Raeford B. Lockamy, II (collectively "petitioners") appeal the trial court's order concluding, *inter alia*, that intervenor-respondent-appellee TigerSwan, Inc.'s ("TigerSwan") proposed training facility is a permitted land use under respondent County of Cumberland's zoning ordinance. After careful review, we affirm, in part, and reverse, in part.

### Background

Petitioners began the underlying action by appealing to the Cumberland County Board of Adjustment (the "Board") the decision of the county's Zoning Administrator to approve a site plan for a training facility (the "Training Facility") in Cumberland County. The site plan for the Training Facility was proposed by TigerSwan, a North

Carolina corporation that has leased approximately 1,000 acres in rural Cumberland County as the site for its Training Facility.

TigerSwan's site plan classified the proposed Training Facility as a "firearms training facility" and the evidence presented in the subsequent appeals established that TigerSwan intends to provide instruction to military, law enforcement, and security personnel in topics such as weapons training, urban warfare, convoy security operations, and "[w]arrior [c]ombatives" in order to "teach, coach, and mentor tomorrow's soldiers." TigerSwan also intends to provide courses on topics such as first aid, firearm and hunting safety, and foreign languages for adults and children.

In addition to classroom facilities, the site plan for the Training Facility includes multiple firing ranges surrounded by berms, or earthen embankments, intended as a barrier to suppress noise from firing weapons and to prevent ammunition from leaving the firing range. Beyond the berms, the firing ranges are surrounded by Surface Danger Zones ("SDZs"), which TigerSwan's site plan describes as open areas of land where "ricochet hazards" that "may endanger nonparticipating personnel, or the general public" might land within TigerSwan's property.

The land leased by TigerSwan, as well as petitioners' property, is zoned as belonging to an A1 Agricultural District under Cumberland County's Zoning Ordinance (the "Zoning Ordinance" or "Ordinance"). The Zoning Ordinance limits the types of commercial uses permitted in an A1 Agricultural District and provides a list of permitted and conditional uses within the district. Included in the list of permitted uses are "SCHOOLS, public, private, elementary or secondary." The Cumberland County Zoning Administrator approved TigerSwan's site plan by classifying the business as a "private school."

Petitioners appealed the approval of the site plan to the Board providing affidavits and in-person testimony of their opposition to the Training Facility. Petitioner Faircloth resides on her property with her family. While petitioners Fort and Lockamy do not live on their properties, they use the properties to enjoy the quiet atmosphere of the rural setting for family cookouts, gardening, and other means of recreation. Petitioners expressed their concerns for the increased noise from the firing ranges and TigerSwan's potential use of helicopters. In addition to the potential noise, petitioners were concerned for their personal safety due to the potential for stray gunfire given that TigerSwan intends to provide weapons training on firearms that

require SDZs of two and a half miles. Due to the quantity of ammunition TigerSwan estimates it will fire in a year (15 million rounds), petitioners also raised concerns over lead contamination of the groundwater and surrounding soil. Because of these potential adverse effects, petitioners believe the approval of the TigerSwan Training Facility will result in a decrease in their property values.

The Board voted unanimously that petitioners had standing to challenge the approval of TigerSwan's site plan, and voted three-to-two in favor of reversing the decision of the Zoning Administrator. However, as a vote of four-fifths of the Board was required to reverse the decision of the Zoning Administrator, N.C. Gen. Stat. § 153A-345(e) (2009), the Zoning Administrator's approval of the site plan was affirmed as a matter of law. Petitioners appealed the Board's decision to the superior court by petition for writ of certiorari. The trial court concluded that petitioners had standing to maintain their appeal, but held that the Training Facility was a permitted use in an A1 Agricultural District under the Cumberland County's Zoning Ordinance. Petitioners appeal from this order.

## Discussion

### A. Standing

[1] TigerSwan first argues that petitioners do not have standing to maintain their challenge to the approval of TigerSwan's site plan. We disagree.

Whether a party has standing to maintain an action "implicates a court's subject matter jurisdiction and may be raised at any time, even on appeal." *Fish House, Inc. v. Clarke*, 204 N.C. App. 130, 136, 693 S.E.2d 208, 212, *disc. review denied*, 364 N.C. 324, 700 S.E.2d 750 (2010). In our determination of whether a party has standing, we utilize a *de novo* review and must "view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). Here, petitioners assert they have standing pursuant to N.C. Gen. Stat. § 160A-393(d)(2) (2009), which confers standing to challenge the Board's decision to "person[s] who will suffer *special damages* as the result of the decision being appealed." (Emphasis added.)

A property owner does not have standing to challenge another's *lawful* use of her land merely on the basis that such use will reduce the value of her property. *Jackson v. Guilford Co. Bd. of Adjustment*,

275 N.C. 155, 161, 166 S.E.2d 78, 82 (1969). However, where the challenged land use is "prohibited by a valid zoning ordinance, the owner of adjoining or nearby lands, who will sustain special damage from the proposed use through a reduction in the value of his own property, does have a standing" to maintain an action to prevent the use. *Id.*

Additionally, in *Magnum,* our Supreme Court held that the petitioners in that case had standing to maintain their suit where the petitioners: (1) challenged a land use that would be unlawful without a special use permit; (2) alleged they would suffer special damages if the use is permitted; and (3) provided evidence of " 'increased traffic, increased water runoff, parking, and safety concerns,' as well as the secondary adverse effects" that would result from the challenged use. 362 N.C. at 643-44, 669 S.E.2d at 282-83. Recently, this Court applied the standard set forth in *Magnum* and concluded that a petitioner challenging her neighbor's application for a use permit on the basis that the proposed use would reduce the value of the petitioner's property was sufficient to establish the petitioner had standing. *Sanchez v. Town of Beaufort,* ___ N.C. App. ___, ___, 710 S.E.2d 350, 353-54, *review denied and dismissed,* ___ N.C. ___, 717 S.E.2d 745, 718 S.E.2d 152, and 718 S.E.2d 153 (2011).

We discern no meaningful distinction between *Magnum, Sanchez,* and the present case. Here, petitioners testified to their concerns that the alleged unlawful approval of the Training Facility would increase noise levels, had the potential to result in groundwater and soil contamination, and threatened the safety of anyone on their property due to stray bullets. These problems, petitioners contend, would result in a decrease in their property values. We conclude this evidence was sufficient to establish standing to challenge TigerSwan's proposed land use.

TigerSwan contends that petitioners' evidence as to the potential impact on their property values is insufficient to support their claim. Specifically, TigerSwan cites N.C. Gen. Stat. § 160A-393, which provides that lay witnesses' opinions as to property values do not constitute competent evidence. However, reading section 160A-393 as a whole, it is apparent the definition of competent evidence provided in subsection (k)(3) of the statute is limited to that subsection, and the definition does not affect the Court's analysis of standing, which is governed by subsection (d). N.C. Gen. Stat. § 160A-393. TigerSwan's argument is overruled.

## B. Permitted Use

**[2]** Next, petitioners contend that the trial court erred in affirming the Board's decision to uphold the Zoning Administrator's classification of the TigerSwan Training Facility as a permitted use in the A1 Agricultural District. We agree.

"In cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 386, 628 S.E.2d 1, 2-3 (2006). "Questions involving the interpretation of ordinances are questions of law." *Ayers v. Bd. of Adjustment*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201, *disc. review denied*, 336 N.C. 71, 445 S.E.2d 28 (1994). In our review of the alleged errors of law made below, we may freely substitute our judgment for that of the superior court. *Id.* at 530-31, 439 S.E.2d at 201.

"In interpreting a municipal ordinance '[t]he basic rule is to ascertain and effectuate the intent of the legislative body.'" *Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjustment*, 334 N.C. 132, 138-39, 431 S.E.2d 183, 187-88 (1993) (citations omitted). In the present case, the Zoning Ordinance for the district in which the Training Facility is located expressly states the intent of the district, as follows:

> A1 Agricultural District. This district is designed to promote and protect agricultural lands, including woodland, within the County. *The general intent* of the district is to permit all agricultural uses to exist *free from most private urban development except for* large lot, single-family development. Some public and/or semi-public uses as well as *a limited list of convenient commercial uses are permitted to ensure essential services for the residents.*

Cumberland County Zoning Ordinance, art. III, § 303A (2010) (Emphasis added.) Although we feel this statement of intent is unambiguous, we also note the title of the zoning district—the A1 Agricultural District—provides additional indication of the spirit and goal of the ordinance. *Ayers*, 113 N.C. App. at 531, 439 S.E.2d at 201 (giving consideration to the title of the zoning district when discerning the intent of the zoning ordinance).

The Zoning Ordinance further provides a list of permitted, conditional, and special uses for the various districts in the County's Zoning Ordinance, including the A1 Agricultural District. Permitted land uses in the A1 Agricultural District include, among others,

"SCHOOLS, public, private, elementary or secondary." Petitioners and respondents disagree as to how to interpret these words.

Petitioners argue that by including "SCHOOLS, public, private, elementary or secondary" as permitted uses, the drafters of the ordinance intended the words "elementary or secondary" to qualify, and to limit, the types of public and private schools, permitting only: public elementary schools, private elementary schools, public secondary schools, and private secondary schools. This interpretation, TigerSwan argues, renders the words "public, private" redundant as all elementary or secondary schools must be either public or private.

Alternatively, TigerSwan proposes an interpretation that each word offset by commas holds their own meaning. Thus, "public" and "private" do not modify "elementary or secondary," and the following schools would be permitted uses: public schools, private schools, elementary schools, and secondary schools. TigerSwan contends the Training Facility qualifies as a "private school" and therefore is a permitted use in the A1 Agricultural District. Petitioners counter that this interpretation renders the words "elementary or secondary" redundant; because all elementary or secondary schools must be either public or private, the inclusion of "elementary or secondary" would be unnecessary unless the words were intended as a limitation.

We construe the Zoning Ordinance by adhering to well-founded principles of statutory construction. *See Cogdell v. Taylor,* 264 N.C. 424, 428, 142 S.E.2d 36, 39 (1965) (noting the rules governing statutory interpretation apply equally to interpretations of zoning ordinances). First, we presume that "no part of a statute is mere surplusage, but that each provision adds something not otherwise included therein." *Duke Power Co. v. City of High Point,* 69 N.C. App. 378, 387, 317 S.E.2d 701, 706, *disc. review denied,* 312 N.C. 82, 321 S.E.2d 895 (1984). Second, "words and phrases of a statute may not be interpreted out of context, but must be interpreted as a composite whole so as to harmonize with other statutory provisions and effectuate legislative intent," *id.,* while avoiding absurd or illogical interpretations, *Ayers,* 113 N.C. App. at 531, 439 S.E.2d at 201. Additionally, we find instructive this Court's use of the long-standing rule of statutory construction: *"expressio unius est exclusio alterius,"* meaning the expression of one thing is the exclusion of another. *Mangum,* 196 N.C. App. at 255, 674 S.E.2d at 747 (citing *Baker v. Martin,* 330 N.C. 331, 337, 410 S.E.2d 887, 890–91 (1991) and *Bd. of Drainage Comm'rs v. Credle,* 182 N.C. 442, 445, 109 S.E. 88, 90 (1921)).

Applying these rules of construction to the ordinance at issue, we conclude the inclusion of "elementary or secondary" in the description of permissible schools was intended to exclude other types of "SCHOOLS," whether they be private or public. It would be illogical for the drafters to provide that all public and all private schools are permitted *in addition to* elementary and secondary schools. Rather, in light of the drafters' express intent for the A1 Agricultural District to limit commercial uses to those providing "essential services," we regard the inclusion of "public" and "private" as an affirmation that *private* elementary or secondary schools are permitted as commercial uses providing "essential services" to residents.

This interpretation is reinforced by the drafters' express prohibition of "SCHOOL[S], business and commercial for nurses or other medically oriented professions, trade, vocational & fine arts." Petitioners argue that the Training Facility should be prohibited based upon this language, while TigerSwan attempts to distinguish the Training Facility from trade or vocational schools by arguing they will teach *skills*, not occupations. Without deciding whether the Training Facility qualifies as either a trade or vocational school, we conclude that the Training Facility is not a permitted use as it is not a public or private, elementary or secondary school.

TigerSwan places great emphasis on the testimony of the Cumberland County Planning Director as to the original intent of the list of prohibited schools and his contention that schools such as the one proposed by TigerSwan were not intended to be prohibited. However, as our Supreme Court has clearly stated, the intent of the drafters of a statute cannot be established in this manner: "Testimony, even by members of the Legislature which adopted the statute, as to its purpose and the construction intended to be given by the Legislature to its terms, is not competent evidence upon which the court can make its determination as to the meaning of the statutory provision." *State v. Nat'l Food Stores, Inc.*, 270 N.C. 323, 332-33, 154 S.E.2d 548, 555 (1967) (rejecting the affidavit of the North Carolina Commissioner of Agriculture as to the intent of a statute regulating the sale of milk). As the rules governing statutory interpretation apply equally to interpretations of zoning ordinances, *Cogdell*, 264 N.C. at 428, 142 S.E.2d at 39, the Cumberland County Planning Director's testimony as to the intent of the Ordinance is irrelevant to our analysis.

Lastly, TigerSwan argues petitioners distort the nature of the activities that will occur at the Training Facility by focusing on the more extreme activities highlighted in their advertising materials—such as training law enforcement and military personnel in urban warfare. TigerSwan does not dispute such skills will be taught at its facility. Rather, TigerSwan stresses that it will also instruct adults and children in leadership, first aid, and foreign languages—skills commonly taught in elementary and secondary schools. However, the Zoning Ordinance expressly states in the introduction to the section on permitted and conditional uses that "no land, building or structure shall be used . . . *in whole or in part* for any use other than the uses permitted" by the district in question. (Emphasis added.) Thus, while TigerSwan may offer some instruction that would be permitted in an elementary or secondary school, the inclusion of permitted uses cannot offset the uses prohibited by the Ordinance. TigerSwan's argument is overruled.

## Conclusion

In sum, the trial court did not err in concluding petitioners had standing to maintain their appeal of the decision of the Board of Adjustment. However, the trial court erred in concluding the TigerSwan Training Facility is a permitted use within the A1 Agricultural District under the Cumberland County Zoning Ordinance. The trial court's order is therefore affirmed, in part, and reversed, in part.

Affirmed, in part, and reversed, in part.

Judges McGEE and HUNTER, Jr., Robert N., concur.