NO. COA14-93

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

SAMUEL and DORIS FORT, JULIA
KATHERINE FAIRCLOTH, RAEFORD B.
LOCKAMY, II, OK FARMS OF CEDAR
CREEK, LLC, and ARNOLD DREW SMITH,
    Petitioners,

    v.                                    Cumberland County
                                    No. 12 CVS 8440

COUNTY OF CUMBERLAND, North
Carolina, and TIGERSWAN, INC.,
    Respondents.


Appeal by respondents from order entered 23 October 2013 by

Judge C. Winston Gilchrist in Cumberland County Superior Court.

Heard in the Court of Appeals 4 June 2014.


       *Currin & Currin, by Robin T. Currin and George B. Currin,
       for petitioners.*

       *Cumberland County Attorney's Office, by Robert A. Hasty,
       Jr., for respondent-appellant County of Cumberland.*

       *Parker Poe Adams & Bernstein LLP, by Charles C. Meeker, for
       respondent-appellant TigerSwan, Inc.*


       McCULLOUGH, Judge.


Respondents TigerSwan, Inc., and Cumberland County appeal

an order of the trial court, reversing a decision made by

Cumberland County's Board of Adjustment that the TigerSwan

facility is permitted in the A1 Zoning District and remanding

with instructions to revoke the site plan approval and zoning permit for the TigerSwan facility. Based on the reasons stated herein, we reverse the order of the trial court.

## I. Background

The Cumberland County zoning ordinance at issue in this appeal was originally adopted on 3 July 1972, revised 20 June 2005, and amended on 18 April 2011 ("the zoning ordinance"). Article IV, Section 402, entitled "Uses by Right" provides as follows:

> All uses of property are allowed as a use by right except where this ordinance specifies otherwise or where this ordinance specifically prohibits the use. In the event, a use of property is proposed that is not addressed by the terms of this ordinance, the minimum ordinance standards for the use addressed by this ordinance that is most closely related to the land use impacts of the proposed use shall apply.

Article IV, Section 403 of the zoning ordinance includes a "Use Matrix" which enumerates permitted and special land uses, as well as some land uses allowed only in a conditional zoning district. The following land uses are enumerated in the "Use Matrix" and are pertinent to the case before us: "RECREATION/AMUS[E]MENT OUTDOOR (with mechanized vehicle operations) conducted outside building for profit, not otherwise listed & not regulated by Sec. 924" ("recreation/amusement")

which is a permitted use in the A1 zoning district; "SCHOOLS, public, private, elementary or secondary" ("public or private school") which is a permitted use in the A1 zoning district; and a "SCHOOL, business and commercial for nurses or other medically oriented professions, trade, vocational & fine arts" ("vocational school") which is not a permitted use in the A1 zoning district.

TigerSwan, Inc. ("TigerSwan") submitted a site plan application to the County of Cumberland ("County") requesting approval for a "Training Collaboration Center" ("the TigerSwan facility"). The TigerSwan facility leases a 978 acre site which sits on a 1,521 acre parcel. The entire site is located in the A1 Agricultural District of the County. Evidence in the record established that the TigerSwan facility would be designed to provide weapons training and firearm safety primarily to the government, military, law enforcement, and corporate organizations. One day a week, the TigerSwan facility would be open to the public. Ninety-five (95%) percent of the activity at the TigerSwan facility would occur on the outdoor gun ranges. TigerSwan intends to have a pro-shop, buildings for instruction, administrative offices, and restrooms.

On 9 April 2012, the County's Planning and Inspections Department ("the Planning Department") issued a site plan approval for the TigerSwan facility. The Planning Department held that the TigerSwan facility was permitted as a recreation/amusement land use. The Planning Department also issued a zoning permit to TigerSwan on 17 April 2012.

Petitioners Samuel and Doris Fort, Julia Katherine Faircloth, Raeford B. Lockamy, II, OK Farms of Cedar Creek, LLC, and Arnold Drew Smith appealed the issuance of the permit to the Cumberland County Board of Adjustment ("the Board"). Specifically, petitioners challenged the approval of the TigerSwan facility by arguing that the County's zoning administrator's classification of the TigerSwan facility as a recreation/amusement land use was erroneous. Petitioners argued that the County had never taken the position that the TigerSwan facility be permitted as recreation/amusement and that the Planning Department's determination was in direct conflict with the County's previous position, as set forth in *Fort v. County of Cumberland*, __ N.C. App. __, 721 S.E.2d 350 (2012) ("*Fort*"), that the TigerSwan facility be classified as a "private school."

Petitioners relied on our Court's holding in *Fort*. In *Fort*, TigerSwan sought approval of a "firearms training facility." *Id.* at __, 721 S.E.2d at 352. Our Court found that TigerSwan

> [i]ntends to provide instruction to military, law enforcement, and security personnel in topics such as weapons training, urban warfare, convoy security operations, and "[w]arrior [c]ombatives" in order to "teach, coach, and mentor tomorrow's soldiers." TigerSwan also intends to provide courses on topics such as first aid, firearm and hunting safety, and foreign languages for adults and children.

*Id.* The site plan included multiple firing ranges in addition to classroom facilities. *Id.* The Cumberland County zoning administrator approved TigerSwan's site plan by classifying the business as a "private school." *Id.* Petitioners Samuel and Doris Fort, Julia Katherine Faircloth, and Raeford B. Lockamy, II, appealed the approval of the site plan and the Board affirmed the decision of the zoning administrator. *Id.* at __, 721 S.E.2d at 352-53. After the *Fort* petitioners appealed to the superior court, the trial court held that the training facility was a permitted use in the A1 zoning district. *Id.* at __, 721 S.E.2d at 353. The *Fort* petitioners appealed to our Court. Under section 402 of the then-existing zoning ordinance[1],

---

[1]This case was decided under the version of the ordinance prior to the 18 April 2011 amendment: Section 402 entitled, "Uses by

our Court held that the TigerSwan facility was not a "private school" and that the TigerSwan facility was not a permitted use in the A1 zoning district. *Id.* at __, 721 S.E.2d 354. Using rules of statutory construction, our Court reasoned that the "schools, public, private, elementary or secondary" category in the zoning ordinance limited permissible schools, private and public, to elementary and secondary education. "[T]he inclusion of 'elementary or secondary' in the description of permissible schools was intended to exclude other types of 'SCHOOLS,' whether they be private or public." *Id.* at __, 721 S.E.2d at 355. Our Court stated that "[w]ithout deciding whether the Training Facility qualifies as either a trade or vocational school, we conclude that the Training Facility is not a permitted use as it is not a public or private, elementary or secondary school." *Id.*

On 10 July 2012, the Board held a hearing on the issue of whether "the staff of the Cumberland County Planning Department erred by failing to classify the use of the site for the [TigerSwan facility] as a vocational school within one of the

Right" provided that "[a]ll uses of property are prohibited except those that are permitted or otherwise allowed under the terms of this ordinance."

School land uses." The Board entered an order that made the following pertinent findings:

> 3. The training offered at the TigerSwan facility is in the nature of skill level improvement.
>
> 4. Approximately 80-90% of the activities conducted at the TigerSwan facility occur outside on the firing ranges, and the training conducted in the meeting rooms is incidental to the firing of pistols and rifles. Twenty percent (20%) of the activity at the TigerSwan facility is recreational in nature and involves sportsmen and families.
>
> . . . .
>
> 7. There is no classification of firing ranges in the Cumberland County Zoning Ordinance.
>
> . . . .
>
> 10. Before the submission of the request for a permit for the TigerSwan facility, Planning Director Tom Lloyd issued a directive to staff that any outdoor firing range would be considered as the classified use [recreation/amusement] for the reason that he believed this was the classified use under the ordinance which created the most similar land use impacts.
>
> 11. The Planning Department classified the TigerSwan facility in accordance with the Planning Director's directive and issued the subject permit. . . .

The Board concluded that the TigerSwan facility did not fall within the classification of a vocational school. The Board also concluded that the decision of the Planning Department "to consider the TigerSwan facility to be an outdoor firing range most similar to the classified use for outdoor recreation[/amusement] was reasonable and was made in conformance with the provision" of the zoning ordinance. The Board dismissed petitioners' appeal and affirmed the issuance of the permit for the TigerSwan facility.

Petitioners then appealed the order of the Board to the Cumberland County Superior Court by filing a petition for writ of certiorari on 25 September 2012.

Following a hearing held at the 26 August 2013 session of Cumberland County Superior Court on petitioners' writ of certiorari, the trial court entered an order on 23 October 2013. The trial court found that the Board's decision "must be reversed and the case remanded to the Board . . . with instructions to revoke the Site Plan and Zoning Permit for the TigerSwan Facility issued on April 9, 2012 and April 17, 2012." The trial court's decision was based on the following, in pertinent part:

> 4. In its Table of Permitted Uses, the
>    Zoning Ordinance sets forth the uses that

are allowed in the A1 District and those which are not. [Vocational schools] are not permitted in the A1 District. The term vocational school is not defined in the Zoning Ordinance.

5.  [Recreation/Amusement] is a permitted use in the A1 District. . . .

6.  The Zoning Ordinance in effect at the time of the approvals by the Zoning Administrator (the "Zoning Ordinance") does not reference a use called a "firing range" or "shooting range," and neither of those terms are defined in the Zoning Ordinance.

. . . .

8.  The decisions to approve the Site Plan and Zoning Permit were based upon the Zoning Administrator's determination that the TigerSwan Facility was an outdoor firing range, which is not addressed by the Zoning Ordinance. The Zoning Administrator then determined, pursuant to Zoning Ordinance Section 402, that the TigerSwan Facility should be regulated as [recreation/amusement] because the land use impacts of the TigerSwan Facility were most closely related to that use.

. . . .

13. Based on the Court's de novo review of the whole record . . . this Court concludes that the TigerSwan Facility is a [vocational school], as set out in the Zoning Ordinance and is, therefore, prohibited in the A1 District. The evidence in the Record established that the TigerSwan Facility fits within the definition of a vocational school and its purposes and activities are consistent

with those of a vocational school as set out in the Zoning Ordinance. The Board of Adjustment, thus, erred in affirming the decision of the Zoning Administrator which determined the TigerSwan Facility was an outdoor firing range, because it is not. The TigerSwan Facility is a vocational school under the Zoning Ordinance. The fact that TigerSwan operates a recreational firing range one day a week and uses a firing range for its courses does not change the nature of the use, which the Record establishes is to provide instruction to military, law enforcement and security personnel for use in their occupations. See Fort v. County of Cumberland, __ N.C. App. __, __, 721 S.E.2d 350, 356 (2012) (while some uses offered by TigerSwan may be permitted, "the inclusion of permitted uses cannot offset the uses prohibited by the [Zoning] Ordinance.").

14. Because the TigerSwan Facility is a vocational school, which is a use that is specifically prohibited in the A1 District, the Zoning Administrator had no authority under the Zoning Ordinance Section 402 to determine that the TigerSwan Facility should be regulated according to the minimum standards for the use with the most closely related land use impacts. Regardless, however, and in the alternative, there was no competent evidence in the Record that could support the determination that the TigerSwan Facility's impacts were most similar to [Recreation/Amusement].

Respondents County of Cumberland and TigerSwan filed notice of appeal on 15 November 2013 from the 23 October 2013 order of the trial court.

## II.  Standard of Review

It is well established that "[j]udicial review of the decisions of a municipal board of adjustment is authorized by N.C. Gen. Stat. § 160A-388(e2), which provides, in pertinent part, that '[e]very decision of the board shall be subject to review by the superior court by proceedings in the nature of *certiorari*.'" *Four Seasons Mgmt. Servs. v. Town of Wrightsville Beach*, 205 N.C. App. 65, 75, 695 S.E.2d 456, 462 (2010).  Upon review of a decision from a Board of Adjustment, the trial court should:

> (1) review the record for errors of law, (2) ensure that procedures specified by law in both statute and ordinance are followed, (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents, (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record, and (5) ensure that the decision is not arbitrary and capricious.

*CRLP Durham, LP v. Durham City/County Bd. of Adjustment*, 210 N.C. App. 203, 207, 706 S.E.2d 317, 319-320 (2011) (citations and quotation marks omitted).

"If a petitioner contends the Board's decision was based on an error of law, *de novo* review is proper." *Four Seasons*, 205 N.C. App. at 75, 695 S.E.2d at 462 (citations and quotation

marks omitted). "Under de novo review a reviewing court considers the case anew and may freely substitute its own interpretation of an ordinance for a board of adjustment's conclusions of law." *Morris Communs. Corp v. City of Bessemer*, 365 N.C. 152, 156, 712 S.E.2d 868, 871 (2011) (citation omitted). "However, if the petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the 'whole record' test." *Four Seasons*, 205 N.C. App. at 75, 695 S.E.2d at 462 (citations omitted). "When utilizing the whole record test, . . . the reviewing court must examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence." *Templeton Properties v. Town of Boone*, __ N.C. App. __, __, __ S.E.2d __, __ (June 3, 2014) (No. COA13-1274).

"When this Court reviews a superior court's order which reviewed a zoning board's decision, we examine the order to: (1) determin[e] whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2) decid[e] whether the court did so properly." *CRLP Durham*, 210 N.C. App. at 207, 706 S.E.2d at 320 (citation omitted).

## III. Discussion

On appeal, respondents argue that the trial court erred by (A) concluding, in paragraphs 13 and 14 of the 23 October 2013 order, that TigerSwan's facility is a vocational school as set out in the zoning ordinance and by (B) concluding in paragraph 14 that there was no competent evidence in the record that could support the determination that the TigerSwan facility's impacts were most similar to the category of recreation/amusement.

A.    Classification of the TigerSwan Facility as a Vocational
School

First, respondents argue that the trial court erred as a matter of law by concluding that the TigerSwan facility was a vocational school pursuant to the zoning ordinance. Respondents also contend that the trial court erred by failing to affirm the determination of the Board that the TigerSwan facility was an outdoor firing range, allowed as a use by right.

"The superior court reviews a board of adjustment's interpretation of a municipal ordinance *de novo*." *MNC Holdings, LLC v. Town of Matthews*, __ N.C. App. __, __, 735 S.E.2d 364, 367 (2012). Reviewing the trial court's 23 October 2013 order, we initially note that the trial court, while reviewing issues involving the interpretation of the zoning ordinance, employed the appropriate *de novo* standard of review. The issue in this

appeal is whether the trial court's legal interpretation of the zoning ordinance was correct. Accordingly, we also employ *de novo* review and "consider [the] question[s] anew." *JWL Invs., Inc. v. Guilford County Bd. of Adjustment*, 133 N.C. App. 426, 429, 515 S.E.2d 715, 718 (1999). *See MNC Holdings*, __ N.C. App. at __, 735 S.E.2d at 367 (stating that because the issue on appeal is whether the trial court's legal interpretation of a municipal ordinance is correct, our Court also employs a *de novo* review).

In determining the meaning of a zoning ordinance, we apply the same principles of construction used to interpret statutes. *See Morris*, 365 N.C. at 157, 712 S.E.2d at 872. In addition,

> we attempt to ascertain and effectuate the intent of the legislative body. Unless a term is defined specifically within the ordinance in which it is referenced, it should be assigned its plain and ordinary meaning. In addition, we avoid interpretations that create absurd or illogical results.

*Ayers v. Bd. of Adjustment*, 113 N.C. App. 528, 531, 439 S.E.2d 199, 201 (1994) (citations omitted). "[R]eviewing courts may make independent assessments of the underlying merits of board of adjustment ordinance interpretations. This proposition emphasizes the obvious corollary that courts consider, but are not bound by, the interpretations of administrative agencies and

boards." *Morris*, 365 N.C. at 156, 712 S.E.2d at 871 (citations and quotation marks omitted).

We first examine the intent of the zoning ordinance. Prior to the 18 April 2011 amendment, the zoning ordinance provided that "[a]ll uses of property are prohibited except those that are permitted or otherwise allowed under the terms of this ordinance." Notably, following the 18 April 2011 amendment, the zoning ordinance provided in Section 402 that "[a]ll uses of property are allowed as a use by right except where this ordinance specifies otherwise or where this ordinance specifically prohibits the use." In determining the intent of the 18 April 2011 amendment, it is evident that the legislative body intended to broaden the spectrum of permissible uses and thereby, freely allowed the use of property except where it was specifically prohibited.

We now consider the term "vocational school" and the Board's interpretation of that term. The term "vocational school" is not defined in the zoning ordinance. "In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a[n ordinance.]" *Perkins v. Arkansas Trucking Servs.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000) (citation omitted). "Vocational" is

defined as "of, relating to, or concerned with a vocation" or "of, relating to, or undergoing training in a skill or trade to be pursued as a career." *Merriam-Webster Online Dictionary*.[2]

Despite the lack of a definition within the zoning ordinance, the Board interpreted the term "vocational school" to mean the following:

> The commonly accepted concept or definition of a vocational school is an institution like Fayetteville Technical Community College where students gain career training through extended courses in classrooms. Vocational schools can have hundreds or thousands of students coming by car to the school each day. The TigerSwan facility has just a limited number of cars each day.

The Board also found that the training offered at the TigerSwan facility was in the nature of "skill level improvement" – eighty to ninety (80 – 90%) percent of the activities conducted at the TigerSwan facility occurred outside on the firing ranges and that the training conducted inside the meeting rooms was incidental to the firing of pistols and rifles. Based on the foregoing, the Board concluded that the TigerSwan facility did not fall within the "vocational school" classification of the zoning ordinance.

---

[2]http://www.merriam-webster.com/dictionary/

Considering the plain and ordinary meaning of the term "vocational" school within the zoning ordinance, in light of the intent of the ordinance, we hold that the Board's determination that the TigerSwan facility did not constitute a vocational school was proper. Uncontested evidence presented before the Board on 10 July 2012 included testimony from Brian Searcy, the Chief Operating Officer for TigerSwan, that ninety-five percent (95%) of "everything that occurs on this facility is range fire, outdoors." Searcy testified that eighty percent (80%) of training is provided to military personnel, law enforcement, and private security contractors "[t]o improve their current skills that they have[.]" One day a week, the firing range is opened to the public for recreational shooters. Significantly, Searcy explained that "[TigerSwan] do[es] not qualify people to do jobs, [does not] give diplomas and [does not] give any degrees. We give a certificate of training to people who attend two or three day courses. All we're doing is helping improve skills that they already have." Searcy agreed that at the TigerSwan facility, people are "just practicing a skill which is firing a weapon[.]" Steve Swierkowski, who coordinates the training events that take place at TigerSwan, testified that "the

majority of the activities takes place on the range" and that "we can execute this range without the use of any classrooms."

Because the TigerSwan facility does not teach a skill or trade to be pursued as a career, but rather, provides training to existing members of a profession in order to practice and refine their already-existing skills, we agree with the Board's conclusion that the training offered at the TigerSwan facility is in the nature of skill level improvement. The TigerSwan facility operates as a firing range, and not as a vocational school, where students gain career training through extended courses in classrooms and receive diplomas or degrees so that they are able to pursue a career. Furthermore, because the zoning ordinance fails to specifically prohibit the use of land as a firing range, it is allowed as a use by right pursuant to Section 402. Based on the foregoing reasons, we hold that the trial court improperly applied *de novo* review of the Board's decision and thus, erred by reversing the Board's conclusion that the TigerSwan facility does not fall within the classification of a vocational school.

B.   Evidence of the TigerSwan Facility as a
      Recreation/Amusement Land Use

Next, respondents challenge the trial court's conclusion that "in the alternative, there was no competent evidence in the Record that could support the determination that the TigerSwan Facility's impacts were most similar to [recreation/amusement]." Respondents argue that there was competent evidence in the record to refute this conclusion.

Because the trial court was reviewing whether the Board's decision that the TigerSwan facility's impacts were most similar to recreation/amusement, it should have applied the whole record test. It is well established that "[w]hile the county board operates as the finder of fact, a reviewing superior court sits in the posture of an appellate court and does not review the sufficiency of evidence presented to it but reviews that evidence presented to the town board." *Mann Media, Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 12-13, 565 S.E.2d 9, 17 (2002) (citation and quotation marks omitted). "[I]f in applying the whole record test, reasonable but conflicted views emerge from the evidence, this court cannot substitute its judgment for the administrative body's decision. Ultimately, we must decide whether the decision has a rational basis in the evidence." *Appalachian Outdoor Adver. Co. v. Town of Boone Bd.*

*of Adjustment*, 128 N.C. App. 137, 141, 493 S.E.2d 789, 792 (1997) (citations and quotation marks omitted).

After thoughtful review, we hold that although the trial court's 23 October 2013 order indicates that it conducted review under the whole record test, it failed to do so properly.

A recreation/amusement land use is defined within the zoning ordinance as follows:

> An area or establishment, which requires the use of motors or engines for the operation of equipment or participation in the activity. This definition includes but is not limited to go-cart tracks, bicycle motorcross (BMX) courses and the like. This definition does not include golf courses (golf carts) or other low impact motorized activities or vehicles.

At the 10 July 2012 hearing before the Board, testimony was offered by Thomas J. Lloyd, director of the Planning Department. Mr. Lloyd testified that he had issued a memorandum dated 21 February 2012 wherein he had made a determination that the TigerSwan facility was a firing range, with the most similar land use impacts of recreation/amusement. Mr. Lloyd, explaining the analysis behind his determination, testified to the following:

> MR. LLOYD: We looked at the affects [sic] of a firing range and noted what would be the biggest objection or the biggest problem with respect to health, safety and welfare

to neighboring properties and of course that would be any projectile leaving the firing range site. Of course there are other aspects too including noise, lighting and traffic volume. But most of all we had to look at the safety of the surrounding property. When you look at outdoor recreation it addresses safety specifically Section 920F which talks about fencing, netting and other control measures and many times with firing ranges, the use permit, shall be provided around the perimeter of any areas used for hitting, flying, or throwing of objects to prevent the object from leaving the designated area. The only thing we had in the ordinance that addressed objects of any kind leaving the site or leaving the area was outdoor recreation. With respect to that and that measure of any projectile on a firing range leaving the area as well as the less impact of lighting and noise, they were also similarly addressed in outdoor recreation.

MR. FLOWERS: Just so we are clear on this, when you issued that memo on February 21, 2012, you were not saying that a firing range is outdoor recreation but that the impact is similar to outdoor recreation, is that right?

MR. LLOYD: Yes sir, which is exactly the way the ordinance amendment in Section 402 read.

Based on the foregoing evidence presented to the Board, we hold that the trial court erred by concluding that there was "no competent evidence" that could support the determination that the TigerSwan facility's land use impacts were most similar to the recreation/amusement classification. "It is neither the

superior court's nor this Court's duty to second guess the decision of [the Board] where there is a rational basis in the evidence." *Myers Park Homeowners Ass'n., Inc. v. City of Charlotte*, __ N.C. App __, __, 747 S.E.2d 338, 344 (2013).

## IV. <u>Conclusion</u>

We hold that the Board properly approved the TigerSwan facility as a firing range with the land use impacts most similar to the recreation/amusement classification. Accordingly, because the trial court improperly reversed the decision of the Board, we reverse the order of the trial court.

Reversed.

Judges STEPHENS and STROUD concur.