IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-704

 Filed: 5 December 2017

Cumberland County, No. 15-CVS-7449

DAVID HAMPTON, and wife, MARY D. HAMPTON, Petitioners,

 v.

CUMBERLAND COUNTY, Respondent.

 Appeal by Respondent from order entered 13 April 2016 by Judge Robert F.

Floyd, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 11

January 2017.

 Yarborough, Winters & Neville, P.A., by Garris Neil Yarborough, for
 Petitioners-Appellees.

 Cumberland County Attorney’s Office, by Robert A. Hasty, Jr., for Respondent-
 Appellant.

 INMAN, Judge.

 This appeal concerns the interpretation and application of a county zoning

ordinance to firing ranges constructed on property without an approved site plan and

permit. We hold that a Farm Identification Number obtained by property owners

from the federal government prior to constructing firing ranges does not, as a matter

of law, establish that operation of the ranges is a farm use exempt from zoning

regulations. We also hold that because the county board of adjustment which first
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

heard the matter failed to resolve material disputed issues of fact, we must vacate

the orders below and remand for necessary findings of fact by the county board.

 Cumberland County (the “County”) appeals from a superior court’s order

reversing a decision by the Cumberland County Board of Adjustment (the “Board”)

affirming in part and modifying in part a Notice of Violations penalizing David

Hampton and his wife, Mary Hampton (collectively the “Hamptons”), for violating the

County’s zoning ordinance by operating a firing range on their property without a

site plan and permit. On appeal, the County argues that the superior court erred in

construing certain exceptions to the ordinance in the Hamptons’ favor. After careful

review, we vacate and remand for proceedings consistent with this opinion.

 I. Factual & Procedural Background

 The record tends to show the following:

 The Hamptons, both retired First Sergeants with the United States Army,

purchased an approximately 74-acre tract of land in Cumberland County (the

“Property”) in September of 2011. The Property was zoned as rural residential. After

purchasing the Property, they obtained a Farm Identification Number from the

United States Department of Agriculture, Farm Services Agency. Per a letter

presented by the Hamptons to the Board, they purchased the Property with the

express intent to “build our final home, a running trail and firing/archery ranges . . .

.” Beyond the Hamptons’ personal enjoyment, the firing ranges were to be

 -2-
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

constructed “for the purpose of teaching others the fundamentals of safe gun handling

and marksmanship, and the maintenance of firearms proficiency.” In a notarized

letter to the Board, the Hamptons’ real estate agent stated that the couple “made it

clear to me from the outset that they have always planned to build ranges, so they

could teach the use of firearms to others . . . .” The Hamptons’ ranges would not be

open to the public, but instead would be available “by appointment-only” to “family,

friends and those with similar interests . . . .” In another notarized letter submitted

to the Board, a friend of the Hamptons stated that the ranges were made available to

the Hamptons’ “family, friends and formal students . . . .”

 The Hamptons started clearing land for the ranges in May of 2012 and built

their first range, 25 yards in length, that summer. David Hampton then began using

the range to instruct students in defensive handgun methods, rifle and carbine

training, and tactical pistol use. The Hamptons expanded the 25-yard range to 40

yards and allowed their friends to use the range in the spring of 2013. In the summer

of 2014, the Hamptons constructed a 100-yard firing range adjacent to the first range.

David Hampton continued to provide training, including instruction in firing

shotguns and tactical shooting techniques, through the beginning of 2015. The

Hamptons reported to the Board that they “introduced more than 30 people to the

safe use of firearms, allowed 25 experienced shooters to increase their proficiency,

and qualified another 26 persons for their North Carolina Concealed Carry Handgun

 -3-
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

Permit” over the course of approximately two years.

 Although the use of firearms is integral to the facts of this case, our review

involves only the interpretation and application of a zoning ordinance and related

statutes. No argument concerning the application or legal relevance of the Second

Amendment to the Constitution of the United States has been advanced by either

party.

 On 6 May 2015, in response to a report from a North Carolina Department of

Environmental and Natural Resources official of an unauthorized firing range on the

Property, a Cumberland County Code Enforcement Officer (the “Officer”) obtained a

warrant to inspect the Property. After inspecting the Property, the Officer issued a

Notice of Violations to the Hamptons citing a lack of an approved site plan or permits

required by the local zoning ordinance. The Notice of Violations ordered the

Hamptons to raze the firing range. 1

 The Hamptons appealed the Notice of Violations to the Board. The Board

conducted a quasi-judicial hearing on 20 August 2015. According to the procedure

provided in the County Code, the Board heard sworn testimony from witnesses and

received documentary evidence from the parties.2 At the conclusion of the hearing,

 1Although the Hamptons have constructed two component ranges, this opinion will refer to
the entire operation as a single firing range, consistent with the language in the local ordinance, the
Notice of Violations, and the proceedings below.
 2 Fourteen members of the public who were not parties to the proceeding were also permitted

to speak under oath to the Board in the course of the meeting.

 -4-
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

the Board voted to find certain facts, to modify the corrective action in the Notice of

Violations from removal of the range to “ceas[ing] any use of the firing range as it

conflicts with the Cumberland County Ordinance[,]” and to affirm the Notice of

Violations as modified. These findings and conclusions were memorialized in the

Board’s order dated 14 September 2015. The Board’s order contains only the

following eight findings of fact:

 1. The Hamptons purchased the subject property
 September 26, 2011, and began construction of the firing
 range thereafter.

 2. Mrs. Hampton testified that only a small berm had been
 constructed on the property in April 2013.

 3. The Hamptons have continued to improve and expand
 the firing range until they were contacted by DENR in May
 2015.

 4. The Hamptons have not used the subject property for a
 residence but have obtained a permit to install a septic
 tank and intend to construct a dwelling on the property.

 5. The use of the property for a firing range does not
 constitute a farm or a farm use on that portion of the
 property on which the firing range is constructed.

 6. Section 107 of the Cumberland County Zoning
 Ordinance has required a zoning permit for any use of land
 since the amendments of June 20, 2005.

 7. The Hamptons do not have a permit for the use of their
 property as a firing range.

 8. The Hamptons have not applied for a permit for the use
 of their property as a firing range.

 -5-
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

 The Hamptons filed a Petition for Writ of Certiorari to the Cumberland County

Superior Court on 2 October 2015 and filed an Amended Petition for Writ of Certiorari

on 3 November 2015.3

 The Hamptons’ amended petition challenged the Board’s order on several

grounds, alleging the Board failed to: (1) exclude certain inadmissible evidence; (2)

follow proper procedure in making findings of fact; and (3) provide the Hamptons with

procedural due process. The Hamptons also alleged that the Board acted arbitrarily

and capriciously, made findings without sufficient evidence, and made errors of law

in its decision. The Hamptons petitioned the Cumberland County Superior Court to

“remand this matter to the [Board], directing it to dismiss the Notice of Violation[s]

and recognize the legal, non-conforming use of the [Property], inter alia, for the non-

commercial use of the [Hamptons], their family and friends as a sport shooting

range.”

 The superior court heard the Hamptons’ appeal on 28 March 2016 and entered

an order reversing the Board’s decision and declaring that the Hamptons’ “non-

commercial use of the 100-yard range facility for target shooting and weapon sighting

 3 The original and amended petitions were made “pursuant to N.C. Gen. Stat. §153A-345.1
and §160A-388[.]” The superior court’s order states the Hamptons’ appeal was heard pursuant to the
same statutes. These statutes govern hearings before boards of adjustment, not appeals therefrom.
The superior court had jurisdiction to hear the Hamptons’ appeal because N.C. Gen. Stat. §§ 153A-349
and 160A-393 (2015), et seq., authorize appeals from orders of boards of adjustment to superior court
by writ of certiorari.

 -6-
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

with family and friends is a legal use of their property.” The superior court also made

findings of fact not contained in the Board’s order, including, among others, the

following:

 8. . . . [The Hamptons] have used this portion of their
 homesite and farm for target practice and weapons
 sighting with family and friends . . . .

 9. No commercial activity has been involved in their
 personal use of this range.

 ...

 14. The [Hamptons’] principal use of the subject property
 is for the [Hamptons’] home and farming operations.

 15. The range is incidental to the enjoyment of the
 [Hamptons’] home and farm.

 ...

 17. The [Hamptons’] ongoing and proposed use is to “shoot
 with family and friends[.]”

The superior court reversed the Board’s decision for “errors at law in its legal

interpretation” of the “occasional target practice” exception set forth in the zoning

ordinance. The superior court also concluded that “any use of the property for a

commercial firing range would subject the property to the permit requirements of the

currently existing Firing Range Ordinance.” The County timely appealed to this

Court.

 II. Standard of Review

 -7-
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

 We review a trial court’s legal conclusions concerning a board of adjustment’s

decision for errors of law. Morris Commc’ns Corp. v. City of Bessemer City Zoning Bd.

of Adjustment, 365 N.C. 152, 155, 712 S.E.2d 868, 871 (2011). Appellate review of a

trial court’s interpretation of a zoning ordinance is conducted de novo, and we apply

the same principles of construction utilized in interpreting statutes. Fort v. Cnty. of

Cumberland, 235 N.C. App. 541, 549, 761 S.E.2d 744, 749 (2014). “Our review asks

two questions: Did the trial court identify the appropriate standard of review, and, if

so, did it properly apply that standard?” Morris Commc’ns Corp., 365 N.C. at 155,

712 S.E.2d at 870 (citation omitted).

 This Court has no authority to make findings of fact on appellate review. Nale

v. Ethan Allen, 199 N.C. App. 511, 521, 682 S.E.2d 231, 238 (2009) (“It is not the role

of the appellate courts to make findings of fact.”). Similarly, a superior court

reviewing a decision by a board of adjustment “is not the trier of fact but rather sits

as an appellate court . . . .” Capricorn Equity Corp. v. Town of Chapel Hill Bd. of

Adjustment, 334 N.C. 132, 136, 431 S.E.2d 183, 186 (1993) (emphasis added)

(citations omitted). In so sitting, the superior court may determine only whether:

 1) the [b]oard committed any errors in law; 2) the [b]oard
 followed lawful procedure; 3) the petitioner was afforded
 appropriate due process; 4) the [b]oard’s decision was
 supported by competent evidence in the whole record; and
 5) [whether] the [b]oard’s decision was arbitrary and
 capricious.

Overton v. Camden Cnty., 155 N.C. App. 391, 393, 574 S.E.2d 157, 159 (2002)

 -8-
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

(alterations in original) (quoting Capital Outdoor, Inc. v. Guilford Cnty. Bd. of

Adjustment, 152 N.C. App. 474, 475, 567 S.E.2d 440, 441 (2002) (citation omitted));

see also N.C. Gen. Stat. §§ 153A-349 and 160A-393(k) (establishing the scope of

review on appeals from a board of adjustment to superior court).

 The superior court’s standard of review of a board of adjustment’s decision is

determined by the particular issues raised on appeal. “If a petitioner contends the

[b]oard’s decision was based on an error of law, ‘de novo’ review is proper.” JWL Invs.,

Inc. v. Guilford Cnty. Bd. of Adjustment, 133 N.C. App. 426, 429, 515 S.E.2d 715, 717

(1999) (citation omitted). “When the petitioner ‘questions (1) whether the agency’s

decision was supported by the evidence or (2) whether the decision was arbitrary or

capricious, then the reviewing court must apply the “whole record” test.’ ” ACT-UP

Triangle v. Comm’n for Health Servs. of the State of N.C., 345 N.C. 699, 706, 483

S.E.2d 388, 392 (1997) (quoting In re Appeal by McCrary, 112 N.C. App. 161, 165, 435

S.E.2d 359, 363 (1993)).

 When applying de novo review, the superior court interprets and applies the

controlling law and substitutes its judgment for that of the board of adjustment.

When applying the whole record test, the superior court examines all competent

evidence in the record to determine whether the decision below was supported by the

evidence. Myers Park Homeowners Ass’n v. City of Charlotte, 229 N.C. App. 204, 208,

747 S.E.2d 338, 342 (2013). When a petition for writ of certiorari from a board of

 -9-
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

adjustment decision involves both standards, the superior court should “apply both

standards of review if required, but the standards should be applied separately to

discrete issues.” Blue Ridge Co., L.L.C. v. Town of Pineville, 188 N.C. App. 466, 470-

71, 655 S.E.2d 843, 846 (2008) (citing Sun Suites Holdings, LLC v. Bd. of Aldermen

of Town of Garner, 139 N.C. App. 269, 273-74, 533 S.E.2d 525, 528 (2000)).

 Section 160A-393(l) of the North Carolina General Statutes provides that when

reviewing a board of adjustment decision, the superior court “may affirm the decision,

reverse the decision and remand the case with appropriate instructions, or remand

the case for further proceedings.” N.C. Gen. Stat. § 160A-393(l). The statute provides

specific procedures in the event the superior court does not affirm a board of

adjustment’s decision in its entirety:

 If the court concludes that the decision by the decision-
 making board is . . . based upon an error of law, then the
 court may remand the case with an order that directs the
 decision-making board to take whatever action should have
 been taken had the error not been committed or to take
 such other action as is necessary to correct the error.

N.C. Gen. Stat. § 160A-393(l)(3). Alternatively,

 [i]f the court concludes that the decision-making board has
 erred by failing to make findings of fact such that the court
 cannot properly perform its function, then the court may
 remand the case with appropriate instructions so long as
 the record contains substantial competent evidence that
 could support the decision below with appropriate findings
 of fact.

N.C. Gen. Stat. § 160A-393(l)(2).

 - 10 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

 Here, the superior court, per its order, reversed the Board’s decision,

concluding that the Board “made errors at law in its legal interpretation.” The

interpretation of a zoning ordinance is subject to de novo review by the superior court,

Welter v. Rowan Cnty. Bd. of Comm’rs, 160 N.C. App. 358, 362, 585 S.E.2d 472, 476

(2003), which the superior court properly recognized in its order. We now address

whether the superior court properly applied this standard.

 III. Analysis

 A. Applicable Sections of the Cumberland County Zoning Ordinance

 In 2005, several years before the Hamptons purchased the Property, the

County adopted a zoning ordinance section making it “unlawful to commence the . . .

use of any land or building . . . until the [the County] issue[s] a zoning permit for such

work or use.” Cumberland Cnty., N.C., Zoning Ordinance § 107.

 Since 2010, the County’s ordinance has exempted from permitting

requirements farm uses on a bona fide farm, provided that the property owners have

received a United States Department of Agriculture Farm Identification Number.

Cumberland Cnty., N.C., Zoning Ordinance § 109 (2010) (the “Farm Exemption”).

However, the Farm Exemption expressly provides that “non-farm uses are subject to

the provisions of [the zoning] ordinance.” Id. (emphasis added). This language tracks

N.C. Gen. Stat. § 153A-340(b)(1) (2015), which exempts from zoning regulation “bona

fide farm[s,]” provided the use in question is not for “nonfarm purposes.” Our courts

 - 11 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

have acknowledged the qualified nature of this exemption. See, e.g., Sedman v.

Rijdes, 127 N.C. App. 700, 703, 492 S.E.2d 620, 622 (1997) (noting that, under N.C.

Gen. Stat. § 153A-340 (1991), “county zoning regulations may not affect bona fide

farms, but any use of farm property for nonfarm purposes is subject to the

regulations[,]” and observing that “[b]ona fide farm purposes” is defined under the

statute as “includ[ing] the production and activities relating or incidental to the

production of crops, fruits, vegetables, ornamental and flowering plants, dairy,

livestock, poultry, and all other forms of agricultural products . . .” (internal quotation

marks omitted)); see also N.C. Gen. Stat. § 153A-340(b)(2) (2015) (defining bona fide

farm purposes to “include the production and activities relating or incidental to the

production of crops, grains, fruits, vegetables, ornamental and flowering plants,

dairy, livestock, poultry, and all other forms of agriculture, as defined in [N.C. Gen.

Stat. §] 106-581.1”).

 In April of 2011, several months before the Hamptons purchased the Property,

the County Board of Commissioners (the “Commissioners”) revised the zoning

ordinance to provide:

 All uses of property are allowed as a use by right except
 where this ordinance specifies otherwise or where this
 ordinance specifically prohibits the use. In the event, [sic]
 a use of property is proposed that is not addressed by the
 terms of this ordinance, the minimum ordinance standards
 for the use addressed by this ordinance that is most closely
 related to the land use impacts of the proposed use shall
 apply.

 - 12 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

Cumberland Cnty., N.C., Zoning Ordinance § 402. In 2012, the County determined

that standards for outdoor recreation “are the most similar and more closely address

the land use impacts that would result from an outdoor firing range than any other

use specific provisions in our ordinance.”

 On 17 June 2013, after the Hamptons had constructed one firing range on the

Property, the Commissioners passed a Text Amendment (the “Firing Range

Amendment”) to the zoning ordinance specifically concerning the zoning and

permitting of firing ranges, which added the following definition:

 Firing Range, Outdoor: A facility, including its
 component shooting ranges, safety fans or shortfall zones,
 parking areas, all structures for classrooms;
 administrative offices, ammunition storage areas and
 other associated improvements, designed for the purpose of
 providing a place for the discharge of various types of
 firearms or the practice of archery. For purposes of this
 ordinance, outdoor firing ranges are a principal use of
 property and therefore, [sic] shall not be considered
 incidental or accessory. This ordinance is exclusive of
 occasional target practice by individuals on property owned
 or leased by the individuals, sighting of weapons for
 purposes of hunting, or temporary turkey shoots conducted
 on a property no more than 12 days in any calendar year.

Cumberland Cnty., N.C., Zoning Ordinance Text Amendment P11-20 (2013)

(emphasis added).4 The Firing Range Amendment also added permitting

 4 In addition to the exception for occasional target practice, sighting of weapons, and temporary
turkey shoots, the Firing Range Amendment provides a second exception for firing ranges in operation
as of 20 June 2005. The Hamptons do not contend that the Property falls within this exception.

 - 13 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

requirements and restricted the operation of outdoor firing ranges to sites no smaller

than 200 acres. Id.

 The ordinance sections governing the Hamptons’ firing ranges reflect a

changing dynamic in the County’s regulation of outdoor firing ranges and their

exemption from regulation. At the time the Hamptons purchased the Property, no

County ordinance expressly regulated firing ranges, so except with respect to farm

uses, the Property was subject to permitting consistent with the most analogous land

use ordinance standards. Since 17 June 2013, the operation of outdoor firing ranges

in the County requires permitting unless the use is a farm use or falls within one of

the exceptions provided in the Firing Range Amendment. Therefore, the Firing

Range Amendment provides additional exceptions from zoning regulation of outdoor

firing ranges. The Board could not affirm the Notice of Violations without resolving

factual disputes relating to these additional exceptions. As explained below, the

Board failed to make necessary findings of fact regarding these exceptions and the

superior court had no authority to make those necessary findings.

 B. The Superior Court’s Interpretation of Applicable Law

 In interpreting the Firing Range Amendment, the superior court correctly

noted that “[z]oning ordinances are in derogation of the right of private property, and

where exemptions appear in favor of the property owner, they must be liberally

construed in favor of such owner.” See, e.g., In re W. P. Rose Builders’ Supply Co.,

 - 14 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

202 N.C. 496, 500, 163 S.E.2d 462, 464 (1932) (“Zoning ordinances are in derogation

of the right of private property, and, where exemptions appear in favor of the property

owner, they should be liberally construed in favor of such owner.”); Coleman v. Town

of Hillsborough, 173 N.C. App. 560, 564, 619 S.E.2d 555, 559 (2005) (“Zoning

regulation is in derogation of common law property rights and therefore must be

strictly construed to limit such derogation to that intended by the regulation.”

(citation omitted)).

 The Hamptons argue that the superior court’s interpretation of the Firing

Range Amendment should be upheld because: (1) it harmonizes the Firing Range

Amendment with a prior existing firearms ordinance; and (2) the distinction between

commercial and non-commercial use—crafted by the superior court—aligns with the

County’s intent in passing the Firing Range Amendment.5

 The Hamptons’ argument that the Firing Range Amendment must be

harmonized with the County’s firearms ordinance is misplaced. The firearms

ordinance makes it unlawful to discharge a firearm within certain distances of

various persons, places, and objects. Cumberland Cnty., N.C., Code of Ordinances §

9.5-100. While it is true that “[s]tatutes dealing with the same subject matter must

be construed in pari materia and harmonized, if possible, to give effect to each[,]” Bd.

of Adjustment of Town of Swansboro v. Town of Swansboro, 334 N.C. 421, 427, 432

 5 We do not reach the parties’ arguments as to commercial and non-commercial uses for the
reasons set forth infra, Part III.C.

 - 15 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

S.E.2d 310, 313 (1993), the Firing Range Amendment and the firearms ordinance do

not govern the same subject matter and are not in conflict.

 The Firing Range Amendment governs the use of land; the firearms ordinance

governs the use of firearms. The fact that a person may run afoul of one ordinance

does not create a conflict with the other. By analogy, simply because a homeowner

may lawfully operate a motor vehicle on her private property does not mean she is

permitted to build a private racetrack in her backyard in contravention of a zoning

ordinance.

 The Hamptons argue that “for homeowners to comply with the provisions of

the County’s Firearms Ordinance, [they are not] require[d ] to own 200 acres of land[,]

as [required by the] Amendment . . . .” This is not a conflict. A homeowner can, as

provided in the Firing Range Amendment, make “occasional” use of a firearm without

meeting the Firing Range Amendment’s criteria for permitting a firing range. A

homeowner can more frequently use a firearm in many different places that he does

not own—such as at a permitted firing range. Because the Firing Range Amendment

and firearms ordinance do not concern the same subject matter and are not in conflict,

this argument is without merit.

 The County argues that the superior court erred in concluding that the Board

misinterpreted the exemption in the Firing Range Amendment concerning

“occasional target practice by individuals.” The County also contends that the

 - 16 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

superior court improperly invalidated the Notice of Violations based on findings that

the Hamptons engaged in non-commercial use of the firing ranges “for target shooting

and weapon sighting with family and friends,” and erred in finding such use was

“incidental to the[ir] enjoyment of the [Property]” such that the Hamptons were

shielded by the County’s Farm Exemption and N.C. Gen. Stat. § 153A-340(b)(1). The

County directs our attention to evidence it contends shows that: (1) the Hamptons’

use of the Property for firearms practice and training was routine and not occasional;

(2) the ranges were not used for “target practice” but instead for formal training; and

(3) the users were not limited to individuals owning or leasing the Property, or even

their friends or family, but included formal students.

 C. Unresolved Factual Issues Preclude Appellate Review

 In urging this Court to reverse the superior court, the County overlooks and

entreats this Court to make a critical error that we are unwilling to repeat: basing an

appellate decision on facts not decided below. The Board made no findings as to how

frequently the Hamptons or their invitees used firearms on the Property, whether

the Property was used for target practice or formal firearms training, or who the

Hamptons allowed to use the Property. Absent those material factual findings, we

are unable to determine on appellate review: (1) how the Board interpreted the Farm

Exemption, N.C. Gen. Stat. § 153A-340(b)(1), and the “occasional use” exception in

the Firing Range Amendment; and (2) how the Board applied those interpretations

 - 17 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

to the facts before it. Nor should the superior court have made such a determination.

We therefore must reverse the superior court—not because we disagree with its legal

conclusions, but because it lacked the necessary factual findings to review the Board’s

decision.

 Interpretation of a term in a zoning ordinance is a question of law. Morris

Commc’ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment, 202 N.C. App.

631, 636, 689 S.E.2d 880, 883 (2010), rev’d on other grounds, 365 N.C. 152, 712 S.E.2d

868 (2011). But whether the specific actions of a property owner fit within that

interpretation is a question of fact. Id. at 636, 689 S.E.2d at 883 (holding that

interpreting the term of a zoning ordinance is a question of law subject to de novo

review but determining whether a party violated that interpretation is a question of

fact subject to the whole record test); see also N.C. Dep’t of Env’t. and Natural Res.,

358 N.C. 649, 665-66, 599 S.E.2d 888, 898 (2004) (noting that whether a state

employee engaged in certain acts is a question of fact and whether those acts

constitute “just cause” for discipline under N.C. Gen. Stat. § 126-35 (2003) is a

question of law). The mixed questions of fact and law disputed in this appeal stymy

our review and precluded the superior court from engaging in a meaningful review.

 Neither party argued to this Court that the Board’s findings of fact were

insufficient to allow meaningful appellate review. However, when a reviewing court

determines that it cannot do its job without exceeding its limited jurisdiction to

 - 18 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

determine issues of law, rather than issues of fact, remand is the proper disposition.

See, e.g., Coble v. Coble, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980) (“Our decision

to remand this case for further evidentiary findings is not the result of an obeisance

to mere technicality. Effective appellate review of an order entered by a trial court

sitting without a jury is largely dependent upon the specificity by which the order’s

rationale is articulated. Evidence must support findings; findings must support

conclusions; conclusions must support the judgment. Each step of the progression

must be taken by the trial judge, in logical sequence; each link in the chain of

reasoning must appear in the order itself. Where there is a gap, it cannot be

determined on appeal whether the trial court correctly exercised its function to find

the facts and apply the law thereto.”).

 The superior court reversed the Board’s decision on the basis that the

Hamptons’ conduct did not violate the zoning ordinance, even though the Board made

no factual findings as to the Hamptons’ conduct. While the superior court could

interpret the ordinance on de novo review, absent factual findings by the Board

regarding the Hamptons’ conduct, the superior court could not find new facts to

reverse the Board’s order and summarily invalidate the Notice of Violations.

 The Firing Range Amendment’s exception to the zoning ordinance allows firing

ranges without a permit where the use is: (1) “occasional” (2) “target practice” (3) “by

individuals on property owned or leased by the individuals[,]” but the trier of fact—

 - 19 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

the Board—made no findings as to any of these three factual elements. The same is

true for the applicability of the Farm Exemption and N.C. Gen. Stat. § 153A-340(b)(1):

while the Board found that the Hamptons’ use of the ranges “does not constitute a

farm or a farm use[,]” it made no finding as to what the Hamptons’ actual use was.

We therefore cannot determine whether the Hamptons’ conduct fell outside the

exceptions such that the Notice of Violations was properly issued.

 The superior court, by making its own factual findings, implicitly recognized

the inadequacy of the findings made by the Board. Instead of remanding the case to

the Board with instructions to make sufficient findings to allow for appellate review

as provided by N.C. Gen. Stat. § 160A-393(l)(2), or remanding with the instructions

necessary to correct an error of law as provided by N.C. Gen. Stat. § 160A-393(l)(3),

the superior court overstepped its role as an appellate tribunal by making its own

findings of fact regarding how the ranges were used and who used them. See

Thompson v. Town of White Lake, ___ N.C. App. ___, ___, 797 S.E.2d 346, 352-53

(2017) (reversing a superior court’s order reviewing a board of adjustment’s zoning

decision because the superior court impermissibly made its own findings of fact);

Deffet Rentals, Inc. v. City of Burlington, 27 N.C. App. 361, 363-64, 219 S.E.2d 223,

226 (1975) (vacating a superior court’s order on writ of certiorari from a board of

adjustment’s decision on the grounds that “[t]he [superior] court is empowered to

review errors in law but not facts. . . . It is not the function of the reviewing court, in

 - 20 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

such a proceeding, to find the facts . . . . It follows that in the instant case the trial

court was without authority to make findings of fact and conclusions of law thereon.

In so doing, it committed error.”).

 N.C. Gen. Stat. § 160A-393(l)(2) states that “findings of fact are not necessary

when the record sufficiently reveals the basis for the decision below or when the

material facts are undisputed and the case presents only an issue of law.” But here,

the record reveals that facts material to the Board’s decision were disputed.

Specifically, the County introduced evidence that it contended showed that the

Hamptons were advertising their range and firearms training,6 while the Hamptons

themselves introduced evidence showing that their use was not limited to family and

friends but was extended to “formal students.” This evidence raises issues of material

fact as to the nature of the use of the Property relevant to an application of the Farm

Exemption, N.C. Gen. Stat. § 153A-340(b)(1), and the exception in the Firing Range

Amendment. The superior court impermissibly resolved these issues when it made

findings of fact that no commercial activity occurred in connection with the ranges

and that the Hamptons’ use of the Property was limited to target practice and weapon

sighting with family and friends. These factual issues were for the Board to resolve,

not the superior court sitting as an appellate court.

 6 The Hamptons contended before the Board that this website was unrelated to their activity
on the Property. It is for the Board, as finder of fact, to resolve this conflict in the evidence. See, e.g.,
State v. Bromfield, 332 N.C. 24, 36, 418 S.E.2d 491, 497 (1992) (“[C]ontradictions in the evidence are
for the finder of fact to resolve.” (citation omitted)).

 - 21 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

 The Board’s order, however, did not resolve these factual disputes. The Board’s

order does not find—does not even mention—how often the ranges were used, what

they were used for, or who used them. The Board’s order does not mention any

farming operations on the Property. Nor does the order mention the Farm

Exemption, N.C. Gen. Stat. § 153A-340(b)(1), or the Firing Range Amendment’s

exception for occasional target practice or other exempt uses. The transcript of the

Board’s hearing reveals no indication from the Board members as to how they

interpreted these exceptions; indeed, the Board members themselves made

absolutely no reference to the Firing Range Amendment’s exceptions or exemptions.

During the Board’s discussion as to farm uses in their fact-finding deliberations, one

member commented: “I think we need to make the fact for sure about the permit and

the use of it as a firing range versus the farm. I think we really need to go on that . . .

I’m saying that they didn’t submit for a permit for the firing range, but they did

submit for the farm use. We need to make that as a facts [sic] finding.” However, the

Board did not include such a finding in its decision and the record does not indicate

how a majority of the Board’s members would interpret the Farm Exemption or N.C.

Gen. Stat. § 153A-340(b)(1) as applied in this matter.

 The parties also disputed before the Board the nature of the Hamptons’ use of

the Property, including whether their use was commercial or non-commercial. A

print-out of a website operated by the Hamptons advertising firearms training for

 - 22 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

$60 while offering “a climate-controlled classroom and . . . our own ever-improving,

private training facilities. . . . No range fees . . . !” was admitted into evidence. The

website print-out, which the Hamptons conceded accurately depicted their website,

also advertised concealed carry courses, a practical carbine course, and a 100-yard

range, which match both the training the Hamptons admitted to offering to users of

their ranges and the length of one of the ranges on the Property. While the Hamptons

on appeal challenge, without particular specificity, the admission by the Board of

“testimony and exhibits” that were “incomplete or irrelevant[,]” the Board may rely

“on evidence that would not be admissible under the rules of evidence as applied in

the trial division of the General Court of Justice if (i) the evidence was admitted

without objection or (ii) the evidence appears to be sufficiently trustworthy and was

admitted under such circumstances that it was reasonable for the decision-making

board to rely upon it.” N.C. Gen. Stat. § 160A-393(k)(3). The Hamptons’ counsel did

not object to the introduction of the website print-out into evidence before the Board,

and they admitted to its accuracy. As for the import of this evidence, that is for the

Board—as the finder of fact—to decide in the first instance.7

 While the parties made well-stated arguments in their briefs and at oral

 7 Our dissenting colleague asserts that the Hamptons’ use of the ranges, if commercial, is akin
to, among other things, “hay rides[,] corn mazes[, and] tractor pulls” and therefore may constitute a
bona fide farm use. It is unclear to us, however, how use of the ranges to instruct individuals in
defensive handgun methods, rifle and carbine training, tactical pistol use, tactical shooting techniques,
and concealed carry handgun permit qualification involve and integrate farming in the same way as
the activities that constitute agritourism under the statute.

 - 23 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

argument concerning whether the Firing Range Amendment is designed to prohibit

commercial firing ranges rather than non-commercial ones, the absence of any

findings of fact by the Board concerning that distinction’s relevance to its decision

means we may only hypothesize as to its import. Nor may we rely on factual findings

made by the superior court to resolve the question, as they were made beyond its

limited scope of review. Capricorn Equity Corp., 334 N.C. at 136, 431 S.E.2d at 186

(“The superior court is not the trier of fact but rather sits as an appellate court . . . .”).

Unfortunately, we are unable to provide guidance under these circumstances, as

“courts do not provide mere advisory opinions with respect to hypothetical

situations.” First-Citizens Bank & Trust Co. v. Barnes, 257 N.C. 274, 276, 125 S.E.2d

437, 439 (1962).

 Our holding that the superior court erred by making its own findings of fact is

compelled by binding precedent. See, e.g., Myers Park Homeowners Ass’n, Inc., 229

N.C. App. at 214, 747 S.E.2d at 341 (affirming a superior court’s denial, in a de novo

review of a board of adjustment’s order interpreting a zoning ordinance, of motions

requesting additional findings of fact under Rules 52 and 59 of the North Carolina

Rules of Civil Procedure on the basis that “the [s]uperior [c]ourt . . . functions as an

appellate court rather than a trier of fact” (internal quotation marks and citation

omitted)); Capricorn Equity Corp., 334 N.C. at 136, 431 S.E.2d at 186 (reversing, in

an appeal from a superior court’s review of a board of adjustment order, this Court’s

 - 24 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

decision to remand to superior court for additional findings of fact on the basis that

“[t]he superior court is not the trier of fact but rather sits as an appellate court . . . .

[T]he Court of Appeals erred in remanding this case to the superior court for findings

of fact.” (citations omitted)); Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Com’rs

Town of Nags Head, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980) (reversing an

opinion of this Court that upheld a superior court’s review of a quasi-judicial zoning

decision partially because “[i]n proceedings of this nature, the superior court is not

the trier of fact. Such is the function of the town board” (citation omitted)); Thompson,

___ N.C. App. at ___, 797 S.E.2d at 352-53; Deffet Rentals, Inc., 27 N.C. App. at 363-

64, 219 S.E.2d at 226.

 This Court has, in proper cases involving the appeal of local government zoning

decisions to superior court, decided the merits of an issue irrespective of legal errors

committed by the superior court in exercising its limited appellate review. Sun Suites

Holdings, LLC v. Bd. of Aldermen of Town of Garner, 139 N.C. App. 269, 274, 533

S.E.2d 525, 528-29 (2000) (reversing and remanding to the trial court, and in turn to

a municipal board, with direction to issue a conditional use permit where the whole

record “fails to reflect that the Board’s decision was sustained by ‘substantial

evidence[]’ ”). But in this case, we are hamstrung by the same problem that beset

this Court in Welter: “[I]nterpretation by our Court of the portions of the zoning

ordinance at issue in this case would not necessarily be dispositive of the case given

 - 25 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

the need for further findings of fact.” 160 N.C. App. at 363-64, 585 S.E.2d at 477. In

that case, we declined to adopt a particular interpretation of a zoning ordinance and

to resolve the case on appeal to this Court because “[i]f [a particular] interpretation

were adopted, the case would not be disposed of because there is still an issue of fact

as to whether [the petitioners conduct violated this interpretation]. . . . [T]he findings

[found] by the Board of Adjustment . . . do not include sufficient findings of fact on

this issue.” Id. at 365, 585 S.E.2d at 478. The same is true here.

 Our dissenting colleague asserts that two of the superior court’s additional

findings of fact were merely “summarizations of the un-contradicted evidence

presented to the Board” and therefore did not constitute prejudicial error under

Cannon v. Zoning Bd. of Adjustment of City of Wilmington, 65 N.C. App. 44, 47, 308

S.E.2d 735, 737 (1983). But the findings identified in the dissent—that the

Hamptons’ principal use of the Property was as a home and farming operation and

that the range was incidental thereto—plainly contradict the Board’s findings that

“[t]he Hamptons have not used the subject property for a residence” and that “[t]he

use of the property for a firing range does not constitute a farm or a farm use on that

portion of the property on which the firing range is constructed.”

 Nor does any evidence in the record show that the use of the firing ranges was

incidental to farming. The Hamptons stated to the Board that they had instructed

81 people in the use of firearms from 2013 through 2015, but they were not actively

 - 26 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

engaged in farming at the time of the hearing. The Officer who issued the Notice of

Violation testified before the Board that he saw no timbering or farming activity

taking place at the Property.

 On this record, our colleague’s reliance on Cannon is misplaced. In that case,

the superior court’s findings were “recitation[s] of largely uncontroverted evidence”

that did not contradict any findings of fact made by the board of adjustment, were

“unnecessary” to the decision, and, in fact, resulted in the superior court affirming

the board’s decision. 65 N.C. App. at 47, 308 S.E.2d at 737. We have since followed

Cannon to hold that findings that merely “recite the [lower tribunal’s] findings of fact

and synthesize the evidence before [said lower tribunal]” do not constitute

“prejudicial error.” Cary Creek Ltd. P’ship v. Town of Cary, 207 N.C. App. 339, 342,

700 S.E.2d 80, 83 (2010) (citing Cannon, 65 N.C. App. at 47, 308 S.E.2d at 737)

(affirming a superior court’s affirmation of a town council’s zoning decision). By

contrast, this Court has consistently held that a superior court, sitting on appellate

review of a board of adjustment’s order, may not make findings of fact that contradict

those made by the board as fact-finder, nor may it resolve factual questions that

determine the outcome of the action. See supra Part III.C.

 The dissent also asserts that the Hamptons’ acquisition of a federal Farm

Identification Number, alone, compels the conclusion that the use of the later

constructed firing ranges was exempt from any and all zoning regulation under N.C.

 - 27 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

Gen. Stat. §§ 153A-340(b)(1)-(2) and the Farm Exemption. This reductive approach

contradicts language in the statute and Farm Exemption and ignores longstanding

precedent.

 At the time this matter was decided by the trial court, state law provided that

a Farm Identification Number constituted “sufficient evidence the property is being

used for bona fide farm purposes.” N.C. Gen. Stat. § 153A-340(b)(2).8 But the statute,

like the County Farm Exemption, provides a qualified exemption that applies only to

farm related purposes. Id. Thus, to claim the benefit of the statute and the County

Farm Exemption, the Hamptons needed to show two things: (1) that the Property was

generally being used for bona fide farm purposes (by, for instance, obtaining a Farm

Identification Number); and (2) that the actual use in question was a farm purpose.

N.C. Gen. Stat. § 153A-340(b)(1) (“These regulations may affect property used for

bona fide farm purposes only as provided in subdivision (3) of this subsection. This

subsection does not limit regulation under this Part with respect to the use of farm

property for nonfarm purposes.”).

 This two-step analysis has been applied by this Court for more than three

decades.

 8 The provision in N.C. Gen. Stat. § 153A-340(b)(2) concerning Farm Identification Numbers
was repealed by the General Assembly effective 12 July 2017, and such a number alone no longer
constitutes sufficient evidence that land is being used for bona fide farm purposes. 2017 N.C. Sess.
Laws 2017-108. Each version of the statute, however, excludes from zoning regulation only those uses
that constitute, relate to, or are incidental to “bona fide farm purposes[.]” Compare N.C. Gen. Stat. §
153A-340(b)(1) (2015) with 2017 N.C. Sess. Laws 2017-108.

 - 28 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

 In Sedman, we addressed the challenged construction and use of a driveway

by large trucks to export plants from greenhouses, operation of large heaters and fans

emitting a low frequency sound in connection with the greenhouses, and sale of

flowers on farm property. 127 N.C. App. at 704, 492 S.E.2d at 622-23. Although it

was undisputed that the greenhouse operation was a bona fide farm, an adjacent

landowner sued for nuisance and alleged that the activities supplementing the

greenhouse operation violated local zoning ordinances. Id. at 701-02, 492 S.E.2d at

621. In affirming partial summary judgment in favor of the farm owners, we held

that the driveway and trucks were “so essential to large-scale agricultural production

that their exclusion from the exemption would render it meaningless[,]” that the

heaters and fans were “incidental to the year-round raising of plants inside

greenhouses[,]” and that the “s[ale] of products raised on the premises is also an

exempt activity.” Id. at 704, 492 S.E.2d at 622-23. Because the farm owners

presented undisputed evidence about the challenged operations and their necessity

to growing and selling plants, we held that the trial court did not err in granting

partial summary judgment in favor of the farm owners on the issue of an alleged

violation of a county zoning ordinance. Id. at 704-05, 492 S.E.2d at 622-23. Similarly,

in County of Durham v. Roberts, 145 N.C. App. 665, 551 S.E.2d 494 (2001), we held

not only that the defendant’s breeding of horses was a bona fide farm use, but further

held that excavation of the property was exempt from zoning regulations because “the

 - 29 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

activity undertaken by defendant was related and incidental to the farming activities

of boarding, breeding, raising, pasturing and watering horses.” 145 N.C. App. at 670-

71, 551 S.E.2d at 498.

 But non-farm uses, even on bona fide farms, are not exempt from zoning

regulation. For this reason, this Court in North Iredell Neighbors for Rural Life v.

Iredell County, 196 N.C. App. 68, 674 S.E.2d 436, disc. rev. denied, 363 N.C. 582, 682

S.E.2d 385 (2009), reversed a ruling by the trial court allowing biodiesel production

on an industrial farm. 196 N.C. App. at 77, 674 S.E.2d at 442. The proposed biodiesel

production would include gathering seeds grown by the farm owner and neighboring

farmers, pressing oil from the seeds, and converting the oil to a combustible fuel. Id.

at 76-77, 674 S.E.2d at 442. The trial court found that the proposed operation would

produce 500,000 gallons of biodiesel fuel per year, of which 100,000 gallons would be

consumed in the farm’s operation and excess fuel would be sold for use on other farms.

Id. at 77, 674 S.E.2d at 442. This Court held that the trial court’s findings did not

support a conclusion that the biodiesel production was exempt from zoning

regulations, and instead established a use which “removes this production from the

realm of bona fide farm use to a non-farm independent commercial enterprise.” Id.

at 77, 674 S.E.2d at 442. We explained:

 While the [landowners’] large scale industrial farming
 operation has certainly fit under the bona fide farm
 exception to date, this added industrial process, as they
 currently intend, is not ‘the production and activities

 - 30 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

 relating or incidental to the production of crops, fruits,
 vegetables, ornamental and flowering plants, dairy,
 livestock, poultry, and all other forms of agricultural
 products . . . .’ N.C. Gen. Stat. § 153A-340(b)(2). The
 [landowners’] intended biodiesel production is therefore
 subject to zoning.

Id. at 77, 674 S.E.2d at 442.

 In Baucom’s Nursery Co. v. Mecklenburg County, N.C., 62 N.C. App. 396, 303

S.E.2d 236 (1983), this Court addressed the interaction between Section 153A-340

and a county ordinance and acknowledged that zoning regulations apply, even on

bona fide farms, to non-farm uses, adopting the hypothetical that “a used car lot upon

an area of a farm would be a non-farm use made of farm properties” and therefore

subject to regulation by zoning ordinances. 62 N.C. App. at 402, 303 S.E.2d at 240

(Braswell, J.) (internal quotation marks omitted).

 Our dissenting colleague’s assertion that the Hamptons’ construction and

operation of the firing ranges is as a matter of law exempt from county regulation

simply because they obtained a Farm Identification Number is in direct conflict with

the binding precedent of this Court’s holding in North Iredell Neighbors for Rural

Life. 196 N.C. App. at 77, 674 S.E.2d at 442. If processing seeds grown on a bona

fide farm to produce biodiesel fuel on that farm is not exempt from zoning regulation,

as we held in that decision, the Hampton’s use of the Property for firing ranges, in

the absence of any evidence that the ranges are incidental to any agricultural activity,

surely cannot be exempt from zoning regulation as a matter of law.

 - 31 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

 We can certainly conceive of instances where a firing range could be incidental

to bona fide farming purposes, such as training farmhands in the use of firearms in

order to kill pests, varmints, or predators that threaten crops or livestock. Whether

such a use or similar uses are demonstrated by the evidence in this case is for the

Board to resolve on remand. But the logical extension of our dissenting colleague’s

analysis would allow the owner of a bona fide farm to engage in unlimited non-farm

uses—such as weapons training or industrial manufacturing—as a matter of law

based on possessing a Farm Identification Number.

 Our holding does not ignore N.C. Gen. Stat. § 153A-340’s mandate that a Farm

Identification Number “shall constitute sufficient evidence that the property is being

used for bona fide farm purposes[.]” Rather, it recognizes that “sufficient evidence”

does not equate to conclusive evidence. When sufficient evidence as to one conclusion

is contradicted by sufficient evidence of the opposite, it is for the finder of fact to

resolve the issue. See, e.g., Baker v. Mass. Mut. Life Ins. Co., 168 N.C. 87, 87, 83 S.E.

16, 17 (1914) (“The evidence as to suicide . . . while sufficient to justify an answer to

the issue in favor of the defendant, . . . was not conclusive, and the inference of an

accidental killing could be accepted. If so, it was for the jury, and not his Honor, to

draw the inference . . . .”);9 State v. Sampson, 72 N.C. App. 461, 465, 325 S.E.2d 514,

517 (1985) (“While there may be sufficient evidence so that the trial court could have

 9 This opinion was reprinted in 1936 at 168 N.C. 147.

 - 32 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

found the existence of those mitigating factors, we do not believe that the evidence so

clearly establishes the fact in issue that no reasonable inference to the contrary can

be found[.]”).

 On remand from the trial court, the Board must make findings as to the

frequency of the use of the ranges and Property for shooting, who the Hamptons

invited or permitted to shoot on the Property, and how the ranges were in fact used.

It must then determine whether the use falls within the Firing Range Amendment’s

exceptions for occasional target practice, weapon sighting for hunting, or turkey

shoots, or other exceptions, or whether it constitutes a farm use not subject to zoning

regulation under the Farm Exemption, N.C. Gen. Stat. § 153A-340, and N.C. Gen.

Stat. § 106-581.1. On remand, “[t]he [Board] may in its discretion receive additional

evidence and hear further argument from the parties, but is not required to do so.”

In re Appeal of Willis, 129 N.C. App. 499, 503, 500 S.E.2d 723, 727 (1998).

 D. Alternative Arguments

 The Hamptons mention in passing several alternative bases to affirm the order

reversing the Board in their brief, contending: (1) they were prejudiced by the period

of public comment at the Board’s hearing; (2) the Board did not understand its

adjudicative function; (3) the Board was biased against the Hamptons, resulting in

an arbitrary and capricious decision; and (4) the Board impermissibly relied on the

advice of counsel from the County Attorney’s office. The superior court did not

 - 33 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

address these issues in its order, and we do not reach them.

 Here, the Hamptons sit as appellees, not appellants, and seek to preserve the

order of the superior court; it is understandable, then, that their brief and oral

argument before this Court focused on issues that court did reach in its order and

offered sparse legal analysis regarding the four issues enumerated above that it did

not reach. Resolution of these issues by this Court at this stage would be limited to

those arguments as stated in the parties’ briefs. Bernold v. Bd. of Governors of Univ.

of N.C., 200 N.C. App. 295, 298, 683 S.E.2d 428, 430 (2009) (“This Court’s task when

reviewing a superior court’s order reviewing an administrative decision is simply to

consider those grounds for reversal or modification raised by the petitioner before the

superior court and properly assigned as error and argued on appeal to this Court.”

(emphasis added) (internal quotation marks and citations omitted)). The superior

court, sitting as the first appellate court on a petition for writ of certiorari from any

subsequent order from the Board in this matter, is in a better position to consider any

such arguments appropriately raised and presented to it on future review, and the

interests of justice and fairness to the parties are better served by allowing full and

complete argument, squarely presented, on these four additional issues above as they

apply to any such future order and review thereof. See, e.g., Nw. Prop. Grp., LLC v.

Town of Carrboro, 201 N.C. App. 449, 466, 687 S.E.2d 1, 12 (2009) (“Having concluded

that the Board failed to make sufficient findings of fact . . . , we do not believe that it

 - 34 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

is necessary or appropriate for us to address these issues at this time . . . . Having

decided that the Board should make a new decision containing proper findings of fact

. . . , we should not presume . . . that we are in a position to ascertain the exact nature

of the factual findings that the Board will make . . . . As a result, we believe that the

most appropriate course is for us to simply remand this case to the trial court for

further remand to the Board for the making of a new decision that addresses all the

issues . . . and to leave the remaining issues that Petitioner has brought to our

attention for decision on another day, assuming that those issues ever need to be

decided.” (internal citation omitted)).

 While it is true that this Court may, in certain circumstances, resolve issues

on appeal from a superior court’s review of a board of adjustment’s decision

irrespective of the superior court’s treatment of them, that is so only where such

review would be dispositive and remand is therefore not automatic. Morris Commc’ns

Corp., 365 N.C. at 158-59, 712 S.E.2d at 872 (“Remand is not automatic when an

appellate court’s obligation to review for errors of law can be accomplished by

addressing the dispositive issue(s). Under such circumstances the appellate court

can determine how the trial court should have decided the case upon application of

the appropriate standards of review.” (internal quotation marks and citations

omitted) (emphasis in original)). We are not obligated to do so, however. N.C. Dep’t

of Env’t. and Natural Res., 358 N.C. at 665-675, 599 S.E.2d at 898-904

 - 35 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

(acknowledging that “[o]rdinarily, when an agency fails to make a material finding of

fact or resolve a material conflict in the evidence, the case must be remanded to the

agency for a proper finding” but electing to resolve the issues on appeal where doing

so served “the interests of judicial economy and fairness to the parties . . .”).

 As stated supra, remand in this case is automatic because material issues of

fact must be resolved by the trier of fact (and not this appellate court) in order for us

to fulfill our appellate function. Welter, 160 N.C. App. at 363-65, 585 S.E.2d at 477-

78. The lack of sufficient finding of facts for meaningful appellate review undoubtedly

impacts these other arguments. See, e.g., Crist v. City of Jacksonville, 131 N.C. App.

404, 405, 507 S.E.2d 899, 900 (1998) (“Findings of fact are an important safeguard

against arbitrary and capricious action by the Board of Adjustment because they

establish a sufficient record upon which this Court can review the Board’s decision.”

(citation omitted)).

 IV. Conclusion

 We vacate the decision of the superior court and remand with instructions to

further remand the case to the Board for further findings of fact concerning how and

how often the firing ranges were used, who the Hamptons allowed to use them, and,

following application of those findings to the various zoning exceptions and

exemptions at issue in this case, to determine whether those findings support a

conclusion that the Hamptons violated the zoning ordinance sufficient to uphold the

 - 36 -
 HAMPTON V. CUMBERLAND CNTY.

 Opinion of the Court

Notice of Violations. The Board may take additional evidence, or not, in its discretion.

 VACATED AND REMANDED.

 Judge CALABRIA concurs.

 Judge TYSON dissents by separate opinion.

 -2-
 No. COA16-704– Hampton v. Cumberland Cty.

 TYSON, Judge, dissenting.

 Cumberland County (the “County”) appeals from a superior court’s order

reversing a decision by the Cumberland County Board of Adjustment (the “Board”).

The Board had affirmed in part and modified in part a code inspector’s Notice of

Violations penalizing David Hampton, and wife, Mary Hampton, and ordering the

demolition of improvements located on their property (collectively the “Hamptons”).

The code enforcement officer had cited the Hamptons for violating the County’s

zoning ordinance by constructing and operating a target range on their property

without applying for a zoning permit and submitting a site plan.

 The County argues that the superior court erred in construing certain

exceptions to and exemptions from the zoning ordinance in the Hamptons’ favor. The

majority’s opinion asserts this Court is unable to review the superior court’s order,

vacates the superior court’s order, and remands for further findings of fact. The

superior court’s conclusions of law in its order construing de novo certain exceptions

to and exemptions from the zoning ordinance in the Hamptons’ favor is properly

affirmed and remanded ultimately to the Board to dismiss the Notice of Violations. I

respectfully dissent.

 I. Factual & Procedural Background

 The Hamptons both retired as First Sergeants with the United States Army.

They purchased approximately 74-acres of land outside of any city or town limits in

Cumberland County (the “Property”) during September 2011. The Property is zoned
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

as Rural Residential (“RR”). After purchasing the Property, the Hamptons applied

for and were issued a Farm Identification Number from the United States

Department of Agriculture Farm Services Agency (“FSA”).

 The Hamptons’ evidence before the Board showed they had purchased the

Property with the express intent to “build our final home, a running trail and

firing/archery ranges . . . .” The target ranges were constructed for the Hamptons’

personal enjoyment, and “for the purpose of teaching others the fundamentals of safe

gun handling and marksmanship, and the maintenance of firearms proficiency.”

 In a notarized letter to the Board, the Hamptons’ real estate agent also stated

the couple “made it clear to me from the outset that they have always planned to

build ranges, so they could teach the use of firearms to others . . . .” The Hamptons’

target ranges would not be open to the public, but instead would be available “by

appointment-only” to “family, friends and those with similar interests . . . .” In

another notarized letter submitted to the Board, a friend of the Hamptons stated that

the ranges were made available to the Hamptons’ “family, friends and formal

students . . . .”

 The Hamptons started clearing land for a target range in May 2012 and cleared

a 25-yards long target range that summer. David Hampton began using that range

for personal use and also to instruct others in defensive handgun methods, rifle and

carbine training, and tactical pistol uses. The Hamptons expanded the 25-yard range

 2
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

to 40 yards in the spring of 2013.

 In the summer of 2014, the Hamptons constructed a 100-yard target range

adjacent to the first range. David Hampton and his family used the ranges and

continued to provide training, including instruction in firing shotguns and tactical

shooting techniques, through the beginning of 2015. The Hamptons stated to the

Board that they “introduced more than 30 people to the safe use of firearms, allowed

25 experienced shooters to increase their proficiency, and qualified another 26

persons for their North Carolina Concealed Carry Handgun Permit” over the course

of approximately two years.

 On 6 May 2015, a Cumberland County code enforcement officer (the “Officer”)

obtained an administrative warrant to inspect the Property, after a North Carolina

Department of Environmental and Natural Resources official reported a target range

being located on the Property. After inspecting the Property, the Officer issued a

Notice of Violations, which cited the Hamptons for lack of an approved site plan or

zoning permit as purportedly required by the zoning ordinance. The Officer ordered

the Hamptons to raze the firing range.

 The Hamptons appealed the Notice of Violations to the Board. The Board

conducted a quasi-judicial hearing on 20 August 2015. The Board heard sworn

testimony from witnesses and received documentary evidence. Fourteen members of

the public, who were not parties to the proceeding, testified under oath to the Board

 3
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

during the course of the meeting.

 At the conclusion of the hearing, the Board found certain facts, voted to modify

the Notice of Violations from requiring razing of the target range to “ceas[ing] any

use of the firing range as it conflicts with the Cumberland County Ordinance[,]” and

to affirm the Notice of Violations as modified. These findings and conclusions are

stated in the Board’s written order dated 14 September 2015. The Board’s order

labeled the following as “findings of fact”:

 1. The Hamptons purchased the subject property
 September 26, 2011, and began construction of the firing
 range thereafter.

 2. Mrs. Hampton testified that only a small berm had been
 constructed on the property in April 2013.

 3. The Hamptons have continued to improve and expand
 the firing range until they were contacted by DENR in May
 2015.

 4. The Hamptons have not used the subject property for a
 residence but have obtained a permit to install a septic
 tank and intend to construct a dwelling on the property.

 5. The use of the property for a firing range does not
 constitute a farm or a farm use on that portion of the
 property on which the firing range is constructed.

 6. Section 107 of the Cumberland County Zoning
 Ordinance has required a zoning permit for any use of land
 since the amendments of June 20, 2005.

 7. The Hamptons do not have a permit for the use of their
 property as a firing range.

 4
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

 8. The Hamptons have not applied for a permit for the use
 of their property as a firing range.

 The Hamptons filed a petition for writ of certiorari to the Cumberland County

Superior Court on 2 October 2015 and filed an amended petition for writ of certiorari

on 3 November 2015.

 The Hamptons’ amended petition challenged the Board’s order on several

grounds and alleged the Board had failed to: (1) exclude certain inadmissible

evidence; (2) follow proper procedure in making findings of fact; and, (3) provide the

Hamptons with procedural due process. The Hamptons also alleged that the Board

had acted arbitrarily and capriciously, made findings without sufficient or supporting

evidence, and committed errors of law in its decision. The Hamptons petitioned the

Cumberland County Superior Court to “remand this matter to the [Board], directing

it to dismiss the Notice of Violation[s] and recognize the legal, non-conforming use of

the [Property], inter alia, for the non-commercial use of the [Hamptons], their family

and friends as a sport shooting range.”

 The superior court heard the Hamptons’ appeal on 28 March 2016 and entered

an order, which declared the Hamptons’ “non-commercial use of the 100-yard range

facility for target shooting and weapon sighting with family and friends is a legal use

of their property.”

 The superior court reversed the Board’s decision for “errors at law in its legal

interpretation” of the “occasional target practice” exception set forth in the zoning

 5
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

ordinance amendment (the “Text Amendment”). The superior court concluded that

“Petitioners’ non-commercial use of the 100-yard range facility is a reasonable and

incidental use of the property as both a home and farm site[,]“ but that “any use of

the property for a commercial firing range would subject the property to the permit

requirements of the currently existing Firing Range Ordinance.” The County timely

filed its notice of appeal on 12 May 2016.

 II. Standard of Review

 A. Review of the Board’s order by the Superior Court

 “The [County bears] the burden of proving the existence of an operation in

violation of its zoning ordinance.” City of Winston-Salem v. Hoots Concrete Co., 47

N.C. App. 405, 414, 267 S.E.2d 569, 575, disc. review denied, 301 N.C. 234, 283 S.E.2d

131 (1980). The superior court’s standard of review of a board of adjustment’s

decision is determined by the particular issues raised on appeal.

 “If a petitioner contends the [b]oard’s decision was based on an error of law, ‘de

novo’ review is proper.” JWL Invs., Inc. v. Guilford Cty. Bd. of Adjustment, 133 N.C.

App. 426, 429, 515 S.E.2d 715, 717 (1999) (citation omitted). In conducting de novo

review, the superior court interprets and applies the controlling law de novo over that

of the Board. Hayes v. Fowler, 123 N.C. App. 400, 404, 473 S.E.2d 442, 444-45 (1996)

(citations omitted).

 “When the petitioner ‘questions (1) whether the agency’s decision was

 6
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

supported by the evidence or (2) whether the decision was arbitrary or capricious,

then the reviewing court must apply the “whole record” test.’ ” ACT-UP Triangle v.

Comm’n for Health Servs. of the State of N.C., 345 N.C. 699, 706, 483 S.E.2d 388, 392

(1997) (quoting In re Appeal by McCrary, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363

(1993)). When applying the whole record test, the superior court examines all

competent evidence in the record to determine whether the Board’s decision was

legally correct and supported by the evidence. Myers Park Homeowners Ass’n v. City

of Charlotte, 229 N.C. App. 204, 208, 747 S.E.2d 338, 342 (2013) (citation omitted).

 When a petition for writ of certiorari from a board of adjustment decision

involves both standards of review, the superior court may “apply both standards of

review if required, but the standards should be applied separately to discrete issues.”

Blue Ridge Co., L.L.C. v. Town of Pineville, 188 N.C. App. 466, 469-70, 655 S.E.2d

843, 846 (2008) (citing Sun Suites Holdings, LLC v. Bd. of Aldermen of Town of

Garner, 139 N.C. App. 269, 273-74, 533 S.E.2d 525, 528 (2000)).

 In reviewing the decision of a board of adjustment, the superior court must

determine whether:

 1) the [b]oard committed any errors in law; 2) the [b]oard
 followed lawful procedure; 3) the petitioner was afforded
 appropriate due process; 4) the [b]oard’s decision was
 supported by competent evidence in the whole record; and
 5) [whether] the [b]oard’s decision was arbitrary and
 capricious.

Overton v. Camden Cty., 155 N.C. App. 391, 393, 574 S.E.2d 157, 159 (2002)

 7
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

(alterations in original) (quoting Capital Outdoor, Inc. v. Guilford Cty. Bd. of

Adjustment, 152 N.C. App. 474, 475, 567 S.E.2d 440, 441 (2002) (citation omitted));

see also N.C. Gen. Stat. §§ 153A-349 and 160A-393(k) (2015) (establishing the scope

of review on appeals from a board of adjustment in counties and cities, respectively,

to superior court).

 B. Review of the Superior Court’s order

 Appellate review of a superior court’s interpretation of a zoning ordinance is

conducted de novo, and this court applies the same principles of construction utilized

in interpreting statutes. Fort v. Cty. of Cumberland, 235 N.C. App. 541, 549, 761

S.E.2d 744, 749 (2014). “Our review asks two questions: Did the trial court identify

the appropriate standard of review, and, if so, did it properly apply that standard?”

Morris Commc’ns Corp v. City of Bessemer City Zoning Bd. of Adjustment, 365 N.C.

152, 155, 712 S.E.2d 868, 870 (2011) (citation omitted).

 A superior court’s legal conclusions concerning a board of adjustment’s decision

are reviewed de novo for errors of law. Id. When such review would be dispositive,

this Court may also review issues on appeal de novo from a superior court’s review of

a board of adjustment’s decision, irrespective of either the board’s or the superior

court’s treatment of them. Id. at 158-59, 712 S.E.2d at 872 (“Remand is not automatic

when an appellate court’s obligation to review for errors of law can be accomplished

by addressing the dispositive issue(s). Under such circumstances, this Court can

 8
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

determine how the [superior] court should have decided the case upon application of

the appropriate standards of review.” (internal quotation marks and citations

omitted) (emphasis in original)).

 III. Analysis

 N.C. Gen. Stat. § 153A-349 provides that when reviewing a board of

adjustment decision, the superior court “may affirm the decision, reverse the decision

and remand the case with appropriate instructions, or remand the case for further

proceedings.” N.C. Gen. Stat. § 153A-349 (applying the provisions of N.C. Gen. Stat.

§ 160A-393 to appeals of the decisions of counties); N.C. Gen. Stat. § 160A-393(l). The

statute also provides specific procedures in the event the superior court does not

affirm a board of adjustment decision in its entirety.

 If the court concludes that the decision by the decision-
 making board is . . . based upon an error of law, then the
 court may remand the case with an order that directs the
 decision-making board to take whatever action should have
 been taken had the error not been committed or to take
 such other action as is necessary to correct the error.

Id.

 As noted, the interpretation and application of a zoning ordinance is subject to

de novo review by the superior court. Welter v. Rowan Cty. Bd. of Comm’rs, 160 N.C.

App. 358, 362, 585 S.E.2d 472, 476 (2003). The superior court concluded the Board

had “made errors at law in its legal interpretation” and reversed the Board’s decision,

The superior court properly recognized its role of de novo review of the Board’s legal

 9
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

conclusions under the statute and precedents in its order. On the proper

interpretation of zoning ordinances, our Supreme Court has repeatedly stated:

 Zoning regulations are in derogation of common law rights
 and they cannot be construed to include or exclude by
 implication that which is not clearly [within] their express
 terms. It has been held that well-founded doubts as to the
 meaning of obscure provisions of a Zoning Ordinance
 should be resolved in favor of the free use of property.
 Yancey v. Heafner, 268 N.C. 263, 266, 150 S.E.2d 440, 443
 (1966) (citation and quotations marks omitted); see also
 Vance S. Harrington & Co. v. Renner, 236 N.C. 321, 324,
 72 S.E.2d 838, 840 (1952) (“Every person owning property
 has the right to make any lawful use of it he sees fit, and
 restrictions sought to be imposed on that right must be
 carefully examined . . . .”); Lambeth v. Town of Kure Beach,
 157 N.C. App. 349, 354, 578 S.E.2d 688, 691 (2003)
 (“Zoning ordinances derogate common law property rights
 and must be strictly construed in favor of the free use of
 property.”).

 Dellinger v. Lincoln Cty., __ N.C. App. __, __, 789 S.E.2d 21, 27, review denied,

369 N.C. 190, 794 S.E.2d 324 (2016).

 The majority’s opinion correctly notes, “the use of firearms is integral to the

facts of this case.” Although the parties have not advanced any arguments related to

the Second Amendment to the Constitution of the United States, the facts and legal

issues of this case implicate the Hamptons’ right to keep, bear and use arms. See U.S.

Const. amend. II. This Constitutional implication reinforces our strict construction

of zoning restrictions on possession and uses of privately owned property. See

Dellinger, __ N.C. App. at __, 789 S.E.2d at 27; Yancey v. Heafner, 268 N.C. 263, 266,

 10
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

150 S.E.2d 440, 443 (1966); see also Vance S. Harrington & Co. v. Renner, 236 N.C.

321, 324, 72 S.E.2d 838, 840 (1952).

 D. Relevant Sections of the Cumberland County Zoning Ordinance

 Several years before the Hamptons purchased the Property, the County

adopted an overly broad zoning ordinance section in 2005 making it “unlawful to

commence the . . . use of any land or building . . . until the [the County] issue[s] a

zoning permit for such work or use.” Cumberland Cty., N.C., Zoning Ordinance § 107.

 Since 2010, the County’s zoning ordinance has expressly exempted from

permitting requirements under the ordinance any farm uses or purposes conducted

on a bona fide farm:

 The provisions of this ordinance do not apply to bona fide
 farms. This ordinance does not regulate croplands,
 timberlands, pasturelands, orchards, or other farmlands,
 or any farmhouse, barn, poultry house or other farm
 buildings, including tenant or other dwellings units for
 persons working on said farms, so long as such dwellings
 shall be in the same ownership as the farm and located on
 the farm. To qualify for the bona fide farm exemption, the
 land must be a part of a farm unit with a North Carolina
 State Cooperative Extension Office or United State
 Department of Agriculture farm number assigned.
 Residences for non-farm use or occupancy and other non-
 farm uses are subject to the provisions of this ordinance.

Cumberland Cty., N.C., Zoning Ordinance § 109 (2010) (the “Farm Exemption”)

(emphasis supplied). It is undisputed the Hamptons applied for and obtained a Farm

Identification Number for this Property, which was issued by the FSA.

 11
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

 The following year in April of 2011, and several months before the Hamptons

purchased the Property the following September, the County Board of Commissioners

(the “Commissioners”), recognizing the error in its ordinance, also amended the 2005

zoning ordinance to provide:

 All uses of property are allowed as a use by right except where
 this ordinance specifies otherwise or where this ordinance
 specifically prohibits the use. In the event, a use of property
 is proposed that is not addressed by the terms of this
 ordinance, the minimum ordinance standards for the use
 addressed by this ordinance that is most closely related to the
 land use impacts of the proposed use shall apply.

Cumberland Cty., N.C., Zoning Ordinance § 402 (emphasis supplied).

 In 2012, maintaining and using target ranges were not specifically addressed

in the ordinance. The County’s zoning staff determined that standards applicable for

outdoor recreation “are the most similar and more closely address the land use

impacts that would result from an outdoor firing range than any other use specific

provisions in our ordinance.”

 After the Hamptons had constructed their target range on the Property, on 17

June 2013, the Commissioners also passed the Text Amendment to the zoning

ordinance, which specifically addresses the zoning and permitting of target ranges,

which added the following definition and exemptions:

 Firing Range, Outdoor: A facility, including its
 component shooting ranges, safety fans or shortfall zones,
 parking areas, all structures for classrooms;
 administrative offices, ammunition storage areas and

 12
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

 other associated improvements, designed for the purpose of
 providing a place for the discharge of various types of
 firearms or the practice of archery. For purposes of this
 ordinance, outdoor firing ranges are a principal use of
 property and therefore, [sic] shall not be considered
 incidental or accessory. This ordinance is exclusive of
 occasional target practice by individuals on property owned
 or leased by the individuals, sighting of weapons for
 purposes of hunting, or temporary turkey shoots conducted
 on a property no more than 12 days in any calendar year.

Cumberland Cty., N.C., Zoning Ordinance Text Amendment P11-20 (2013) (emphasis

supplied).

 In addition to the exemption for “occasional target practice,” “sighting of

weapons,” and “temporary turkey shoots,” the Text Amendment provides a second

retroactive exemption for all firing or target ranges in operation as of 20 June 2005.

The Hamptons do not contend that their Property falls within this second exemption,

as that date occurred prior to their purchase of the Property. The Text Amendment

also added permitting requirements and restricted the operation of non-exempt

outdoor firing ranges to sites no smaller than 200 acres. Id.

 At the time the Hamptons purchased the Property, no County ordinance

expressly regulated target ranges. Except for the exemptions for bona fide farm

purposes and uses in the statute and ordinance, and the 2011 Amendment to the

ordinance, providing “all uses of property are allowed as a use by right,” the Property

was otherwise subject to zoning regulation consistent with the most analogous land

use ordinance standards.

 13
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

 Since 17 June 2013, the operation of “outdoor firing ranges”, which expressly

includes “[a] facility, including its component shooting ranges, safety fans or shortfall

zones, parking areas, all structures for classrooms; administrative offices,

ammunition storage areas. . .” requires permitting, unless the property was issued a

farm identification number for a bona fide farm use or purpose under Cumberland

Cty., N.C., Zoning Ordinance § 109 (2010) or the uses fall within the stated

exemptions provided in the Text Amendment. Id.

 B. Bona Fide Farm Use

 1. Standard of Review

 Error will not be presumed on appeal. “Instead, the ruling of the court below

in the consideration of an appeal therefrom is presumed to be correct.” Beaman v.

Southern Ry. Co., 238 N.C. 418, 420, 78 S.E.2d 182, 184 (1953) (internal quotation

marks and citation omitted). It is the appellant’s burden to show error occurring at

the superior court.

 This Court has also repeatedly emphasized that it is not the role of the

appellate court to create an appeal for an appellant or to supplement an appellant’s

brief with legal authority or arguments not contained therein. See, e.g., Eaton v.

Campbell, 220 N.C. App. 521, 522, 725 S.E.2d 893, 894 (2012) (citations omitted).

 2. County’s Argument

 The County argues that the superior court erred in concluding the Board had

 14
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

misinterpreted the exemption in the Text Amendment concerning “occasional target

practice by individuals.” The County also contends the superior court improperly

invalidated the Notice of Violations, based upon a conclusion that the Hamptons used

their property “for target shooting and weapon sighting with family and friends.” The

County also argues the superior court erred in concluding such use was “incidental

to the[ir] enjoyment of the [Property],” such that the Hamptons’ use is allowed

without permitting under either, or both, of the County’s Farm Exemption or Text

Amendment exemptions.

 The County directs our attention to evidence it contends shows that: (1) the

Hamptons’ use of the Property for firearms practice and training was routine and not

occasional; (2) the ranges were not used for “target practice” but instead for formal

training; and (3) the users exceeded the scope of “friends and family” to include

“formal students.”

 The County specifically points to findings of fact 14 and 15 in the superior

court’s order as being contradicted by competent evidence presented before the Board.

The County also argues the superior court’s conclusion of law 7 is contrary to law.

 Findings of fact 14 and 15 of the superior court’s order read:

 14. The Petitioners’ principal use of the subject property is
 for the Petitioners’ home and farming operations.

 15. The range is incidental to the enjoyment of the
 Petitioners’ home and farm.

 15
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

 Conclusion of law 7 in the superior court’s order reads:

 7. The Petitioners’ non-commercial use of the 100-yard
 range facility is a reasonable and incidental use of the
 property as both a home and farm site.

 Findings of fact 14 and 15 in the superior court’s order are summarizations of

the uncontradicted evidence presented to the Board that the Hamptons’ target range

is an incidental use of their Property within bona fide farm purposes, based upon

their improvements and uses after being issued a Farm Identification Number by the

FSA. See Cannon v. Zoning Bd. of Adjustment of City of Wilmington, 65 N.C. App. 44,

47, 308 S.E.2d 735, 737 (1983) (finding it permissible for trial court to recite

uncontroverted evidence in findings of fact section of order).

 The superior court’s conclusion of law 7 is supported by both findings of fact 14

and 15, which are recitations of the competent, uncontroverted evidence of the

Hamptons’ uses and improvements after having been issued a Farm Identification

Number by the FSA. Conclusion of law 7 is a proper interpretation and conclusion,

based on the bona fide farm purposes exemption contained in both N.C. Gen. Stat. §

153A-340 and § 109 of the Cumberland County Zoning Ordinance.

 N.C. Gen. Stat. § 153A-340 provides bona fide farm purposes are exempt from

permitting and use requirements of county zoning ordinances. N.C. Gen. Stat. §

153A-340 (2015).

 [W]hen the General Assembly granted authority to the
 counties to regulate and restrict the use of land by means

 16
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

 of zoning ordinances in N.C. Gen. Stat. § 153A-340,
 including the power to regulate and restrict the “use of
 buildings, structures, and land for trade, industry,
 residence, or other purposes,” it carved out one important
 exception to the counties’ jurisdiction: the authority to
 regulate land being used for “[b]ona fide farm purposes.”
 Specifically, county zoning “regulations may not affect
 bona fide farms, but any use of farm property for nonfarm
 purposes is subject to the regulations.” N.C. Gen. Stat. §
 153A-340. Although the statute does not define “bona fide
 farm,” it does define “[b]ona fide farm purposes” to “include
 the production and activities relating or incidental to the
 production of crops, fruits, vegetables, ornamental and
 flowering plants, dairy, livestock, poultry, and all other
 forms of agricultur[e,] [as defined in G.S. 106-581.1. Id.]

Sedman v. Rijdes, 127 N.C. App. 700, 703, 492 S.E.2d 620, 622 (1997); N.C. Gen. Stat.

§ 153A-340 (2015).

 N.C. Gen. Stat. § 153A-340(a) provides a limited delegation of power to

counties to implement zoning regulations. However, the statute preserves un-

delegated power to the General Assembly and ultimately to the People, and severely

limits the county’s delegated police power to enact zoning regulations which may

affect and purport to regulate property uses under the bona fide farm exemption. All

property uses under bona fide farm purposes, with the exception of swine farms, are

exempt from zoning permitting and use regulations. N.C. Gen. Stat. § 153A-340(b).

 N.C. Gen. Stat. § 153A-340(b) provides:

 (b)(1) . . . This subsection does not limit regulation under
 this Part with respect to the use of farm property for
 nonfarm purposes.

 17
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

 (2) . . . For purposes of determining whether a property is
 being used for bona fide farm purposes, any of the following
 shall constitute sufficient evidence that the property is
 being used for bona fide farm purposes:

 ....

 e. A Farm Identification Number issued by the United
 States Department of Agriculture Farm Service Agency.

N.C. Gen. Stat. § 153A-340(b)(1)-(2) (emphasis supplied).

 “When the language of a statute is clear and unambiguous, there is no room

for judicial construction, and the courts must give it its plain and definite meaning.”

Correll v. Div. of Soc. Servs., 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992) (citations

omitted). The language of N.C. Gen. Stat. § 153A-340(b)(1)-(2) is clear and

unambiguously provides that if the owners of real property have been issued a Farm

Identification Number by the FSA, then that issuance and designation under the

statute constitutes “sufficient evidence the property is being used for bona fide farm

purposes.” N.C. Gen. Stat. § 153A-340(b)(1)-(2); see Correll, 332 N.C. at 144, 418

S.E.2d at 235.

 The County does not dispute the Hamptons applied for and were issued a Farm

Identification Number by the FSA for their Property. Furthermore, the County

presented no evidence that the Hamptons’ Property did not qualify for a Farm

Identification Number or that the FSA improperly issued a Farm Identification

Number to the Hamptons for their Property to be entitled to the exemption.

 18
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

 Earlier this year, the General Assembly amended N.C. Gen. Stat. § 153A-

340(b)(2)e to remove “A Farm Identification Number issued by the United States

Department of Agriculture Farm Service Agency” from the list of factors constituting

sufficient evidence of bona fide farm use in 2017. That action does not affect the facts

and controlling law before us. The County cited the Hamptons in violation of the

county ordinance long prior to the effective date of the amendment of N.C. Gen. Stat.

§ 153A-340(b)(2). N.C. Sess. Laws 2017-108, effective 12 July 2017.

 Because the Hamptons’ were undisputedly issued a Farm Identification

Number by the FSA for the Property, their use of the Property for a bona fide farm

purpose is established under the statute and ordinance as a matter of law. N.C. Gen.

Stat. § 153A-340(b)(1)-(2). Their use of the property for target practice and related

purposes is exempt from the County’s zoning regulations under N.C. Gen. Stat. §

153A-340(b)(1) and Cumberland Cty., N.C., Zoning Ordinance § 109 (2010).

 The majority’s opinion asserts that finding the Hamptons’ use of their property

to be exempt from county zoning regulation, solely because of them having a Farm

Identification Number, is in direct conflict with this Court’s holding in North Iredell

Neighbors for Rural Life v. Iredell Cty., 196 N.C. App. 68, 77, 674 S.E.2d 436, 442

(2009). The instant case is not analogous with and is distinguishable from North

Iredell Neighbors, as well as Cty. of Durham v. Roberts, 145 N.C. App. 665, 551 S.E.2d

494 (2001); Sedman, 127 N.C. App. 700, 492 S.E.2d 620; and Baucom’s Nursery Co.

 19
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

v. Mecklenburg County, N.C., 62 N.C. App. 396, 303 S.E.2d 236 (1983). None of those

cases cited by the majority’s opinion dealt with the issue of property having one of the

five items listed in N.C. Gen. Stat. § 153A-340(b)(1)-(2), including a Farm

Identification Number, which constitute sufficient evidence of bona fide farm use as

a matter of law.

 The majority’s opinion interprets the five items listed in N.C. Gen. Stat. §

153A-340(b)(2), as only generally establishing a property is a bona fide farm.

However, this interpretation contradicts the plain language of the statute, which says

“any of the following shall constitute sufficient evidence that the property is being

used for bona fide farm purposes[.]” N.C. Gen. Stat. § 153A-340(b)(2) (emphasis

supplied). The statute contains no qualification that limits the extent to which the

five items listed therein expressly establish a “property is being used for bona fide

farm purposes[.]” Id.

 The majority opinion’s interpretation of N.C. Gen. Stat. § 153A-340(b)(2)

effectively overlooks or judicially “repeals” the plain statutory language that a Farm

Identification Number, and the other four items in the statute, constitutes sufficient

evidence that a property is being used for bona fide farm purposes. The plain

language of the statute contains no such limitation. Our standards of review and

canons of statutory construction do not allow the majority’s “nose under the tent.”

We are compelled to give a statute “its plain and definite meaning.” Under controlling

 20
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

canons of construction and the lack of any ambiguity, such a judicially “enacted”

limitation should not be read into N.C. Gen. Stat. § 153A-340(b)(2). See Correll, 332

N.C. at 144, 418 S.E.2d at 235.

 The superior court properly applied de novo review to reverse the Board’s legal

conclusion, incorrectly labeled as Finding of Fact number 5, “that the Hampton[s’]

use of the subject property for a firing range is not a permitted use under the

Cumberland County Zoning Ordinance.” Under strict construction of the ordinance,

the superior court properly applied both N.C. Gen. Stat. § 153A-340(b)(1)-(2) and the

express farm exemption in the Cumberland County Zoning Ordinance § 109 in

concluding the Hamptons’ use of their Property for a target range “is a reasonable

and incidental use of the property as both a home and farm site” and the uncontested

fact recited in the superior court’s order that the Hamptons “obtained a farm number

from the United States Department of Agriculture for the subject property.”

 “The [County bears] the burden of proving the existence of an operation in

violation of its zoning ordinance.” City of Winston-Salem, 47 N.C. App. at 414, 267

S.E.2d at 575. It is the County’s burden as the appellant to show reversible error

occurring at the superior court. See Beaman, 238 N.C. at 420, 78 S.E.2d at 184.

 The County does not contest the Hamptons’ evidence that they applied for and

were issued a Farm Identification Number from the FSA for the property at issue.

The County failed to meet or carry its burden of proving the existence of any violation

 21
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

of its zoning ordinance. The County’s assignments of error in the superior court’s

findings of fact 14 and 15 and that portion of conclusion of law 7 are properly

overruled.

 C. Commercial v. Non-Commercial

 The County argues the superior court made an incorrect distinction between

commercial and non-commercial uses in its conclusions of law 7 through 10 in

interpreting the County zoning ordinance. The superior court’s conclusions of law 7

through 10 read as follows:

 7. The Petitioners’ non-commercial use of the 100-yard
 range facility is a reasonable and incidental use of the
 property as both a home and farm site.

 8. The Petitioners’ non-commercial use of the 100-yard
 range facility for target shooting and weapon sighting with
 family and friends is a legal use of their property.

 9. However, any use of the property for a commercial firing
 range would subject the property to the permit
 requirements of the currently existing Firing Range
 Ordinance.

 10. Furthermore, any use of the property for a non-
 commercial firing range exceeding a distance of 100 yards
 may make the use of the firing range non-incidental to the
 use of the property for farm and residential purposes.
 (Emphasis supplied.)

 The Text Amendment applying to target ranges, County Zoning Ordinance §

402, and the County’s Farm Exemption make no distinction between “commercial”

and “non-commercial” uses. Furthermore, the bona fide farm exemption provided by

 22
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

N.C. Gen. Stat. § 153A-340(b)(1)-(2) and the county zoning ordinance make no

distinction between “commercial” and “non-commercial” bona fide farm purposes

when exempting uses of property from regulation and required permitting under

county zoning ordinances. N.C. Gen. Stat. § 153A-340(b)(1)-(2).

 The only evidence in the record to support the distinction made by the superior

court between “commercial” and “non-commercial” uses comes from the testimony of

the Code Enforcement Officer, who had cited the Hamptons in violation of the zoning

ordinances. The officer testified at the Board’s hearing that his basis for issuing the

Notice of Violations was that he believed the target range was being used for

“commercial activity.”

 As correctly noted and argued by the County, the zoning ordinances and the

statutes do not distinguish between “commercial” and “non-commercial” uses of

target ranges. Furthermore, the Notice of Violations issued to the Hamptons does

not state it was issued because their property was being used for “commercial

purposes” as opposed to “non-commercial” or not for “bona fide farm purposes.”

 Also, charging admission or fees for or selling items produced by rural or

agricultural activities, such as: hay rides; corn mazes; tractor pulls or contests;

boarding and riding stables and lessons; rodeos; petting zoos; livestock; milk and

cheese sales; hunting and fishing leases or access; turkey and ham shoots and

contests; saw mills and wood sales; selling plants and seedlings; egg production and

 23
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

sales; winery tours and tastings; “you-pick” fruit and vegetable fields and gardens;

roadside stands; and many other related activities, are part and parcel of North

Carolina’s common rural heritage and farming operations and are protected

agritourism. See N.C. Gen. Stat. § 106-581.1(6) (2015) (including “agritourism” as

within the meaning of “agriculture”), N.C. Gen. Stat. § 153A-340(b)(2) (including

forms of “agriculture,” as defined in N.C. Gen. Stat. § 106-581.1, to constitute bona

fide farm purposes that are exempt from zoning).

 The superior court’s use of “non-commercial” and “commercial,” specifically

conclusion of law 9, stating “any use of the property for a commercial firing range

would subject the property to the permit requirements of the currently existing Firing

Range Ordinance[,]” is without any basis in the either the applicable County zoning

ordinances or under North Carolina’s general statutes. Those portions of the superior

court’s conclusions of law 7 through 10, to the extent they purport to establish “non-

commercial” and “commercial” uses not mentioned in the ordinance, should be

disregarded as surplus. Cumberland Cty., N.C., Zoning Ordinance § 402 (“All uses of

property are allowed as a use by right. . . .”).

 The County has not challenged, and the Hamptons have not cross-appealed,

that portion of the superior court’s conclusion of law 10, which states the Hamptons’

use of their property as a firing range would become non-incidental to a farm use or

other exempt purposes, if it were expanded to exceed 100 yards in length. Fran’s

 24
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

Pecans, Inc. v. Greene, 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999) (stating

that “[f]ailure to [challenge a conclusion] constitutes an acceptance of the conclusion

and a waiver of the right to challenge said conclusion as unsupported by the facts.”)

In light of the lack of challenges from either party, the superior court’s conclusion of

law 10 properly remains undisturbed.

 IV. Conclusion

 “Zoning regulations are in derogation of common law rights and they cannot

be construed to include or exclude by implication that which is not clearly [within]

their express terms. It has been held that well-founded doubts as to the meaning of

obscure provisions of a Zoning Ordinance should be resolved in favor of the free use

of property.” Yancey, 268 N.C. at 266, 150 S.E.2d at 443 (citation and quotation marks

omitted). The superior court properly construed the statutes and ordinances

consistent with these canons of construction.

 “The longstanding rule is that there is a presumption in favor of regularity and

correctness in proceedings in the [superior] court, with the burden on the appellant

to show error.” L. Harvey & Son Co. v. Jarman, 76 N.C. App. 191, 195-96, 333 S.E.2d

47, 50 (1985) (citing In re Moore, 306 N.C. 394, 293 S.E.2d 127 (1982), app. dism., 459

U.S. 1139, 74 L.Ed.2d 987 (1983)). The County, as the appellant, had the burden on

appeal to show reversible error in the superior court’s order. They have failed to do

so here. The portion of the superior court’s order, which reversed the Board of

 25
 HAMPTON V. CUMBERLAND CTY.

 Tyson, J., dissenting

Adjustment’s conclusion and decision, that the Hamptons’ use of their property for

target practice of firearms and sighting of weapons was in violation of the County

zoning ordinance’s permit and site plan requirements, is properly affirmed.

 As the County correctly notes, the superior court’s conclusion to distinguish

between “commercial” and “non-commercial” uses, which is based solely upon the

County’s code enforcement officer’s testimony of his motivation to issue the Notice of

Violations, is surplus and without any basis under either the bona fide farm use

provisions under the controlling statutes or the farm and Text Amendment

exemptions in the County zoning ordinance.

 The superior court’s conclusion of law 10, which states the Hamptons’ use of

their property as a target range would become non-incidental to bona fide farm uses,

if it were expanded to exceed 100 yards in length, is unchallenged by either party and

properly remains undisturbed.

 The superior court’s order should be affirmed and remanded to the superior

court with instructions to further remand to the Board for the purpose of rescinding

the Notice of Violations. I respectfully dissent.

 26